Anthony Lamar CALHOUN, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–94–294–CR.

Court of Appeals of Texas,
Waco.

Aug. 13, 1997.

---

Walter M. Reaves, Jr., West, for appellant.

John W. Segrest, Criminal District Attorney, Beth Toben, Asst. Criminal District Attorney, for appellee.

Before Davis, C.J., and CUMMINGS and VANCE, JJ.

## OPINION ON REMAND

CUMMINGS, Justice.

A jury found the appellant, Anthony Lamar Calhoun, guilty on two counts of injury to a child. TEX. PENAL CODE ANN. § 22.04 (Vernon 1994). The punishment assessed on count one was twelve years' confinement in the Institutional Division of the Texas Department of Criminal Justice, and the jury recommended a ten-year probated sentence on count two.

On appeal Calhoun's convictions were affirmed by this court; however, Calhoun's petition for discretionary review was granted by the Court of Criminal Appeals which reversed and remanded this case. *Calhoun v. State*, No. 10–94–294–CR (Tex.App.—Waco July 17, 1996), *rev'd*, No. 1299–96 (Tex.Crim. App. January 29, 1997). The Court, in a *per curiam* opinion, directed this court to reconsider the merits of Calhoun's original third and fourth points of error disputing the sufficiency of the evidence supporting his convictions. *Calhoun v. State*, No. 1299–96 (Tex. Crim.App. January 29, 1997). The merits of these points were not addressed by our original opinion, which concluded that these points of error had been waived. The Court refused to review Calhoun's other points of error. *Id.*

Calhoun's brief following remand contains five points of error asserting that: (1) in this court's original opinion, the court erred by applying an improper standard to review an error in the charge; (2) the evidence is legally insufficient to establish that Calhoun intentionally or knowingly caused serious bodily injury to his sons, Dreon and Nino Calhoun; (3) the evidence is legally insufficient to establish that Calhoun intentionally or knowingly by omission caused serious bodily injury to Dreon Calhoun; (4) the evidence is factually insufficient to establish that Calhoun intentionally or knowingly caused serious bodily injury to Dreon and Nino Calhoun; and (5) the evidence is factually insufficient to establish that Calhoun intentionally or knowingly by omission caused serious bodily injury to Dreon Calhoun. We affirm Calhoun's convictions.

## I. Factual Background

On January 27, 1993, police officers and medical personnel responded to an emergency call requesting help for a child who was injured. Upon arrival, emergency personnel found Dreon Calhoun, a seven month old infant, not breathing and having burns covering eighty-five to ninety percent of his body. Nino Calhoun, an eighteen month old baby,

was found with burns on both his feet and lower legs. Dreon died as a result of his injuries, and his body was sent to Tarrant County for an autopsy. Nino's burns were treated by physicians at Parkland Medical Center in Dallas who surgically applied skin grafts to his burns.

Calhoun claims that the boys' injuries were due to a bathtub accident that occurred when he was out of the apartment. Calhoun testified that he put both children in the bathtub with two or three inches of water. Then Calhoun stated that he left the children alone in the bathtub while he went to return a sewing needle to a neighbor. While out of the apartment, Calhoun visited with several neighbors around the apartment complex and claims that when he returned home he discovered the children had been injured. Calhoun said he found Nino lying on the floor crying and Dreon was floating face down in the bathtub with the hot water running. Then Calhoun described for the jury how he went to get help from a neighbor.

The State's principal theory at trial was that the injuries to the infant, Dreon, were not only scalding injuries caused by exposure to the hot bathtub water, but that his burns were actually a combination of dry heat or flame type burns and liquid burns caused by the hot water. The method of inflicting the dry heat burns was never proved, but the State argued that after Dreon received the dry heat burns Calhoun intentionally placed Dreon in the bathtub's scalding water in order to make all Dreon's burns appear to be accidental liquid burns. The State also asserted that the hot liquid immersion burns suffered by Nino were caused when Calhoun dipped Nino into the bathtub to make it look like Nino had turned on the hot water and caused the accident.

The jury convicted Calhoun of intentionally or knowingly causing Dreon's injuries by act or omission, thereby rejecting the lesser included offenses of recklessly or criminally negligently by omission causing the injuries. *See* TEX. PEN.CODE ANN. § 6.03 (Vernon

1994). The jurors also found Calhoun guilty of intentionally or knowingly causing the injuries to Nino Calhoun by his actions. *Id.*

## II. Points of Error

Calhoun's first point of error asserts that this court erred in its original decision by applying an improper standard to review an error in the trial court's charge. In his original appeal, Calhoun claimed that the inclusion of the phrase "engage in conduct" in the trial court's charge was a fundamental error that lowered the State's burden of proof. This court's decision found a waiver of Calhoun's complaint and the Court of Criminal Appeals refused to review Calhoun's petition for discretionary review on this point. On remand Calhoun seeks a reconsideration of this court's original decision claiming that an improper standard was used in deciding that this point had been waived.

■■■ After a case has been remanded by the Court of Criminal Appeals "the jurisdiction originally granted to the [court of appeals] by constitutional and statutory mandate is fully restored."[1] *Adkins v. State,* 764 S.W.2d 782, 784 (Tex.Crim.App.1988). Thus, the appellate court is vested with the jurisdiction to address not only the specific points which were the subject of the remand, but also to reconsider points of error in its earlier decision which the Court of Criminal Appeals refused to review. *Cf. State v. Hall,* 794 S.W.2d 916, 917 (Tex.App.—Houston [1st Dist.] 1990), *aff'd,* 829 S.W.2d 184 (Tex.Crim. App.1992) (refusal to grant a petition for discretionary review does not express approval of the lower court's decision). Despite possessing the power to re-examine points of error which have already been considered, appellate courts rarely engage in this type of review in order to "prevent useless relitigation of issues already decided and to promote judicial economy." *Cf. LeBlanc v. State,* 826 S.W.2d 640, 644 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd) (discussing the "law of the case" doctrine).

1. The Court of Criminal Appeals has recently granted a petition for discretionary review to decide this issue in *Cain v. State,* No. 12-93-00155-CR (Tex.App.—Tyler September 30, 1996, pet. granted) (not designated for publication) (whether the court of appeals exceeded the scope of the remand order from the Court of Criminal Appeals).

However, we feel compelled to exercise our jurisdiction in reviewing the merits of Calhoun's first point of error. Our reconsideration of Calhoun's first point of error does not conflict with *Williams v. State*, in which the Court of Criminal Appeals found that we had exceeded the scope of remand by deciding the case on "a matter, not argued, not briefed, and not raised on appeal by either side." 829 S.W.2d 216, 217 (Tex.Crim.App. 1992). In the instant case, Calhoun, has merely continued to assert his first point of error throughout the appellate process and the State has had the opportunity to respond to this point.

■ After reviewing Calhoun's brief following remand, we conclude that Calhoun's first point of error was not waived, and the merits of Calhoun's argument must be examined. Calhoun claims that the inclusion of the phrase "engage in conduct" was error because it lowered the State's burden of proof to only require evidence that he intended the conduct which caused the injury rather than requiring proof of his intent to cause the result of his conduct, *i.e.*, serious bodily injury to his son. In reviewing claims that there was an error in the trial court's charge, appellate courts utilize a two-step review process for determining (1) whether a charge error exists and (2) if an error caused sufficient harm that warrants reversal of the conviction. *Porter v. State*, 921 S.W.2d 553, 557 (Tex.App.—Waco 1996, no pet.).

■ In accord with the Court of Criminal Appeals decision in *Morales v. State*, where the Court found no error in a charge including "engage in conduct," we hold that the inclusion of this phrase in Calhoun's charge did not allow the jury to convict based upon the defendant's conduct alone, rather than his intent to cause the result of his conduct. 853 S.W.2d 583, 585 (Tex.Crim.App.1993). In *Morales*, the court held that the trial court's charge contained no error because it followed the statute and contained instructions on the required mental states which properly informed the jury that the defendant must have intended the result of his conduct. *Id.*

As in *Morales*, Calhoun's charge correctly informed the jury of the requirements to convict a defendant for committing an injury to a child. The second paragraph of the charge correctly informs the jury that the defendant must cause the injury as required by TEX. PEN.CODE ANN. § 22.04(a)(1) (Vernon 1994):

> Our law provides that a person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, causes serious bodily injury or disfigurement. . . .

Also, the charge correctly defined conduct, intentionally, and knowingly which informed the members of the jury that the defendant must have acted with the required mental state intending the result of his actions:

> "Conduct" means an act or omission and its accompanying mental state.
>
> A person acts intentionally, or with intent, with respect to a result of his conduct when it is his conscious objective or desire to cause the result.
>
> A person acts knowingly or with knowledge with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result.

The phrase "engage in conduct" appears for the first time at the bottom of the paragraph on page five of the charge:

> Our law provides that to be guilty of the offense of injury to a child as alleged in the indictment, the defendant must have intentionally or knowingly caused serious bodily injury. . . . Therefore, if you believe from the evidence beyond a reasonable doubt that the defendant did cause the serious bodily injury . . . or did then and there intentionally or knowingly by omission cause serious bodily injury . . . but you have reasonable doubt as to whether he intentionally or knowingly by omission or by *engaging in conduct* caused the said serious bodily injury, disfigurement or deformity, then you will acquit the defendant of injury to a child. . . .

(emphasis added).

The phrase "engage in conduct" when read with the preceding definitions, instructions, and accompanying text in this paragraph clearly directed the jury that its focus was

only on whether the defendant intended the result of his conduct. We are unable to find that the inclusion of "engage in conduct" was error. For the same reason we likewise hold that no error exists due to the inclusion of this phrase in the application paragraphs for count one and for count two. As *Morales* points out, the removal of the phrase "engage in conduct" would be advisable in future jury charges to avoid any possibility of jury confusion, but the inclusion of this language in Calhoun's charge did not misinstruct the jury on the law's requirement that the defendant only be convicted if he intended the result of his actions. *Id.*

■ However, assuming, *arguendo,* that the inclusion of this phrase was error this court finds that there is not sufficient harm which warrants the reversal of Calhoun's conviction. The phrase "engage in conduct" appeared in the trial court's charge three times, but defense counsel never objected to the inclusion of this phrase. Absent a valid objection at trial, which informs the trial judge of the claimed error and gives the court an opportunity to correct it, the error is not preserved, and the court of appeals will not reverse unless it was a fundamental error. *See Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984). A fundamental error is an error that is "so egregious and created such harm that [the defendant] 'has not had a fair and impartial trial.'" *Id.* In determining if an error is fundamental the appellate court examines the record as a whole to determine the actual degree of harm to the defendant. *Id.*

Any error caused by the phrase "engage in conduct" was not so egregious that it deprived Calhoun of a fair and impartial trial. Not only were there numerous sections in the charge which correctly informed the jury that Calhoun had to intend the result of his conduct, but throughout the trial both the State and defense counsel emphasized that Calhoun could only be convicted for intending the result of his conduct. For example, in closing argument defense counsel stated:

Ladies and gentlemen, the offense of [i]njury to a [c]hild is a specific result crime. . . . [I]n order for the State to prove an intentional and knowing injury to a child, you must believe beyond a reasonable doubt that Mr. Calhoun's conscious

objective or desire was to cause that serious bodily injury, disfigurement or deformity to his children.

In summary, we find that the inclusion of the phrase "engage in conduct" in Calhoun's charge was not error because the charge instructions and definitions correctly informed the jury that the defendant was only to be convicted for intending the result of his conduct. Additionally, any error caused by the use of this language would be harmless and not fundamental error because the jurors were inundated with argument and instructions correctly stating the law. Calhoun's first point is overruled.

■ In his second point of error, Calhoun has complained that the evidence is legally insufficient to establish that he intentionally or knowingly caused serious bodily injury to Dreon and Nino Calhoun. When confronted with a challenge to the legal sufficiency of the evidence, this court must view the evidence in the light most favorable to the prosecution to determine if a rational jury could find beyond a reasonable doubt that Calhoun intentionally or knowingly caused his sons' injuries. *See Alvarado v. State,* 912 S.W.2d 199, 207 (Tex.Crim.App.1995); *Hernandez v. State,* 938 S.W.2d 503, 513 (Tex.App.—Waco 1997, pet filed); *see also Gale v. State,* 747 S.W.2d 564, 565 (Tex. App.—Fort Worth 1988, no pet.); *McCann v. State,* 695 S.W.2d 791, 792 (Tex.App.—Texarkana 1985, no pet.).

The State provided expert testimony and circumstantial evidence from which the jury could have found that the injuries to Dreon were intentionally or knowingly caused by Calhoun. Calhoun claimed that both Dreon and Nino were in good physical condition when he put them into the bathtub with two or three inches of water and only when he returned to the apartment did he discover that both children had been scalded. Thus, any evidence establishing that Dreon had suffered flame-type dry heat burns, in addition to his liquid burns, would be probative evidence that Calhoun was not being truthful regarding what occurred and that Dreon had actually been intentionally or knowingly injured by Calhoun.

The State called two expert witnesses to testify that Dreon suffered charring burns

consistent with exposure to flame or dry heat. Dr. Krouse, a medical examiner from Tarrant County who performed the autopsy on Dreon, testified that Dreon suffered charring burns on his inner thighs, lower legs, left forearm, and right elbow, in addition to liquid immersion burns covering eighty-five to ninety percent of his body. Dr. Krouse explained that these charring burns could not have been caused by hot liquids, and the charred areas of the skin were covered with sooty, carbon deposits which are frequently seen when a person is burned in a house or automobile fire. The doctor told the jury that the debris collected by police from the bathtub contained charred, blackened human skin and singed hair. The hair had been melted, and Dr. Krouse testified that this does not occur from exposure to hot liquids.

The State also called Patricia Eddings, a trace evidence expert, to testify that skin and hair evidence from the autopsy, the bathtub, and Dreon's blanket were consistent with a charring, flame-type, dry heat burn. Eddings described how she examined hair shafts found in the charred material and discovered that they had a bubbled appearance which could only be caused by exposure to dry heat. Also, she informed the jury that the skin samples she received contained blackened, charred skin. Finally, Eddings testified that the dry heat burns occurred prior to Dreon's exposure to the hot water in the bathtub.

Several eyewitnesses also reported seeing evidence of charring burns. Stephanie Stevens, the neighbor to whom Calhoun first reported the emergency, testified that she saw black burn marks on Dreon in addition to his red appearance where his skin had sloughed off from the liquid immersion burns. She also saw "black stuff floating around in the tub." Judith Unger, one of the paramedics who responded to the emergency call, testified that she saw charring burns on Dreon's skin. Unger reported that she had previously seen similar charring burns on the victims of house fires. She also stated that the black substance on Dreon's blanket looked like burnt flesh.

After reviewing the evidence demonstrating that Dreon suffered dry heat burns, as well as liquid burns, we hold that there is legally sufficient evidence from which a rea-

sonable jury could conclude that Calhoun intentionally or knowingly inflicted serious bodily injury to his son Dreon. See Alvarado, 912 S.W.2d at 207.

Calhoun has also challenged the legal sufficiency of the evidence supporting his conviction for intentionally or knowingly causing serious bodily injury to his son Nino. The State called Dr. John Hunt, the co-director of the Parkland Burn Unit where Nino was treated, to testify about the cause of Nino's injuries. Dr. Hunt explained to the jury that Nino suffered burns on both his feet and ankles from exposure to a hot liquid. He found a clear "water line" or "sharp demarcation between the area that was not burned and the area that was burned" on Nino's legs which indicated that this was not an accidental injury. Dr. Hunt testified that in an accidental burning a child will withdraw from a hot liquid. This withdrawal will cause an uneven burn pattern as the child splashes in the hot water while attempting to get out of the bathtub. Dr. Hunt stated that Nino's uniform burn pattern on his legs was "consistent with an immergent injury that the child was put in water at that depth." He concluded that the burn was "not a voluntary injury or accidental injury."

In addition to hearing Dr. Hunt's testimony, jurors were able to see Nino's burns when they viewed photographs of Nino taken after the accident while he had large blisters on his feet and ankles. These photographs show an extremely even, consistent burn pattern. The burns on both of Nino's feet appear to stop at the same level where there is a very clear line of demarcation between the burned and unburned areas of his skin. From the testimony of Dr. Hunt and from viewing the photos of Nino's burns, a rational juror could conclude beyond a reasonable doubt that the defendant, Anthony Calhoun, had intentionally or knowingly injured his son Nino. See Alvarado, 912 S.W.2d at 207. Calhoun's second point is overruled.

Calhoun's third point of error challenges the legal sufficiency of the evidence that he intentionally or knowingly by omission caused serious bodily injury to Dreon. Calhoun's charge allowed the jury to convict for either of the two alternatively pled theories: that Calhoun caused Dreon's injury by act or by omission. Due to our disposition of Cal-

houn's second point, it will be unnecessary for us to review whether the evidence is legally sufficient to show that Calhoun, by omission, caused Dreon's injuries. When several theories have been alternatively pled by the State and the jury returns a general verdict, the verdict will be affirmed if the "evidence is sufficient to support a guilty finding under any of the allegations submitted." *Rabbani v. State*, 847 S.W.2d 555, 558 (Tex.Crim.App.1992); *see McDuff v. State*, 939 S.W.2d 607, 614 (Tex.Crim.App.1997). We do not reach Calhoun's third point of error.

In Calhoun's fourth point of error he claims that the evidence is factually insufficient to establish that he intentionally or knowingly caused serious bodily injury to Dreon and Nino. We originally declined to review Calhoun's factual-sufficiency points because they were raised for the first time at oral argument and in a subsequently filed supplemental brief. A point raised for the first time in an amended or supplemental brief is normally considered to be untimely filed unless the appellate court in its discretion decides in the interest of justice the point should be reviewed. *Skillern v. State*, 890 S.W.2d 849, 882 (Tex.App.—Austin 1994, pet. ref'd). Despite the fact that the remand order of the Court of Criminal Appeals only requires us to review the legal sufficiency of the evidence, in the interest of justice we will also consider Calhoun's factual sufficiency point which was raised after *Clewis v. State* was decided. *See* 922 S.W.2d 126 (Tex.Crim. App.1996); *see also Kerr v. State*, 921 S.W.2d 498, 500 (Tex.App.—Fort Worth 1996, no pet.).

In opposing our review of this point, the State suggests that Calhoun's factual sufficiency point should not be reviewed because it is inadequately briefed and presents nothing for review. The State compares Calhoun's claim of factual insufficiency to the factual insufficiency point discussed in *McDuff v. State*, 939 S.W.2d 607, 613 (Tex. Crim.App.1997). In *McDuff*, the Court of Criminal Appeals faulted the defense's brief because it failed to propose a standard to review factual sufficiency points and it failed to argue how the evidence was insufficient. *Id.* We are unable to agree with the State's contention that Calhoun's factual sufficiency point is inadequately briefed. Defense counsel discussed the standard of review for factual sufficiency points and argued why the evidence was factually insufficient. While it is true that defense counsel's argument applying the standard of review to the facts is quite short, Calhoun's argument discussing why he believes the evidence is insufficient was throughly discussed in his legal sufficiency points. Also, we note that defense counsel was unaware that this court would reconsider its original holding and address Calhoun's factual sufficiency points. Consequently, we find that Calhoun's factual sufficiency points have been adequately briefed. *See* Tex.R.App. P. 74(p).

When a complaint about the factual sufficiency of the evidence is raised by the appellant, we must consider all the evidence and reverse the jury's decision "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Jones v. State*, 944 S.W.2d 642, 647 (Tex.Crim.App.1996) (citing *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996)). In performing this review, appellate courts must always give due deference to the jury's assessment of the weight and credibility of the testimony in order to avoid becoming a "thirteenth juror" in deciding the case. *Desselles v. State*, 934 S.W.2d 874, 878 (Tex. App.—Waco 1996, no pet.).

Calhoun contends that the evidence fails to prove that Dreon's and Nino's injuries were intentionally or knowingly inflicted by him. The defense's theory at trial was that Calhoun put Dreon and Nino in the bathtub with two or three inches of water and then he left the apartment to return a sewing needle to a neighbor. While Calhoun was absent from the apartment, the defense asserts that Nino climbed out of the bathtub, turned the hot water on, and climbed back in the bathtub. Calhoun suggests that both of Nino's feet were burned before Nino was able to crawl out of the bathtub, and the bathtub continued to fill with hot water until it was half full when Calhoun returned to the apartment to find Dreon floating in it.

The defense also contended that Dreon suffered no dry heat burns. Calhoun called Dr. Robert Bux, a medical examiner from Bexar County, to testify that Dreon suffered

no dry heat burns and that all of his burns were the result of liquid immersion. Dr. Bux testified that the brown areas on Dreon where the skin had not peeled were merely deeper liquid burns and not charring dry heat burns. Dr. Bux stated that charred skin peels in "big black chunks" and not in the small black flakes which covered Dreon and his blanket. Also, Dr. Bux believed that if Calhoun had held the children in the water there probably would have been bruises or nail marks on the children, as well as splash burns on both Calhoun and the children from hot water splashing as Calhoun held the struggling children in the water.

The defense witnesses theorized that the black marks on Dreon's body and blanket were not charred tissue, but rather scorched flour which Dreon's mother put on him as a diaper rash remedy. Moreover, several defense witnesses told the jury that Calhoun loved his children and would not intentionally burn them. Finally, Calhoun argues that since the State has not identified the source of Dreon's dry heat burns, they must have merely been accidental liquid burns.

While Calhoun has presented an alternative explanation for his children's injuries which the jury could have chosen to believe, the evidence in his favor is not so overwhelming that the jury's verdict is rendered clearly wrong and unjust. *See Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App.1996). In addition to the State's witnesses testifying about Dreon's dry heat burns and the straight burn line around Nino's feet, which were discussed above, the State presented evidence which contradicted Calhoun's version of events. For example, Stevens, the neighbor who was the first person at the scene responding to Calhoun's call for help, testified that Dreon's skin was already cold when she touched him on his neck and wrist. Then when Stevens went into the bathroom she found that the water in the bathtub was also cool. Kimberly Ann Garrett, one of the paramedics who assessed Dreon's condition, confirmed that Dreon's skin was cool to the touch and below normal body temperature. Thus, the jury could infer that Calhoun had not just removed Dreon from the bathtub's scalding water because both the bathtub wa-

ter and the infant were cool to the touch. Furthermore, Calhoun drained the bathtub after the paramedics arrived so the police were not able to check the water's temperature.

The State also used Calhoun's statements to impeach his credibility. Stevens reported that Calhoun told her that he put the children in the bathtub without having any water in it, but he later told others that he put two or three inches of water in the tub. Then when Stevens was questioning Calhoun about where he had been when his children were hurt he told her "something about the store," unlike his later statements that he had left to return a sewing needle. Judith Unger, one of the paramedics, testified that Calhoun said he found Dreon face down in the bathtub with Nino standing at the back of the bathtub crying. Both of these statements were contradicted by the State's evidence. If Nino had been standing at the back of the bathtub when Calhoun found him, Nino's burns would have been much higher on his legs and not just on his feet and ankles because the tub was half filled with water when the children were found. Furthermore, Dreon's immersion burns, according to Dr. Krouse, are consistent with his being face up because he had unburned skin on part of his face and forehead.

Additionally, the State cast doubt on Calhoun's credibility when Calhoun was questioned about his story that he needed a sewing needle to repair torn pants he had left at his wife's apartment.[2] The State argued that Calhoun had merely borrowed the needle and returned it later in order to create witnesses for his alibi. The State also established that Calhoun had been out of the apartment talking with neighbors for longer than the five or ten minutes which he claimed he was away.

Finally, the State's evidence contradicted Calhoun's contention that all the black marks on Dreon and his blanket were caused by the burned flour diaper rash remedy. Eddings, the State's trace evidence expert, stated that she found charred skin in addition to a "burned starchy material." Thus, the jury could have reasonably believed that charred skin was present on Dreon in addition to black flour.

---

2. Calhoun's story regarding his torn pants is

important because it is relevant to why Calhoun

Consequently, after reviewing all the evidence both supporting and contradicting the verdict, we find the jury's decision that Calhoun intentionally or knowingly injured Dreon and Nino is not so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. *See Clewis*, 922 S.W.2d at 129. Point four is overruled because there is factually sufficient evidence to support the jury's verdict.

■ Calhoun's fifth point of error challenges the factual sufficiency of the evidence that he intentionally or knowingly by omission caused serious bodily injury to Dreon. Appellate courts in reviewing the legal sufficiency of the evidence have developed a general rule "that when the jury returns a general verdict and the evidence is sufficient under any of the allegations submitted, the verdict will be upheld." *Rabbani v. State*, 847 S.W.2d 555, 558 (Tex.Crim.App.1992). Logic dictates that this rule apply with equal force when appellate courts are conducting a factual sufficiency review. *See generally Fuller v. State*, 827 S.W.2d 919, 931 (Tex. Crim.App.1992); *Skillern v. State*, 890 S.W.2d 849, 877 (Tex.App.—Austin 1994, pet. ref'd). Therefore, because we have already found factually sufficient evidence that Calhoun by his actions intentionally or knowingly inflicted serious bodily injury on Dreon, there is no need for us to review whether there is factually sufficient evidence that Calhoun intentionally or knowingly by omission inflicted this injury. We do not reach Calhoun's fifth point of error.

The judgment is affirmed.

---

left the children alone in the bathtub. Calhoun testified that he borrowed a sewing needle from a neighbor that morning in order to sew his torn pants. Calhoun claims the reason that he left the two children in the bathtub was so he could return this sewing needle after he finished sewing his pants. The State attacked Calhoun's story in an attempt to show that Calhoun was lying about the circumstances surrounding the accident.

In Calhoun's written statement to police Calhoun says he borrowed a needle and thread to sew his pants from a neighbor, but when the State asked Calhoun where he got the thread Calhoun testified that the got the thread the day before the accident from an uncle who lived in Mart. The State challenged this claim as well because Calhoun's picking up the thread the day before the accident, in preparation to sew pants he left at his wife's apartment, contradicted his earlier testimony that he had not planned to stay overnight at his wife's apartment on January 26, 1993, but that he did so only because his wife was upset after a fight with her sister. Also, Calhoun testified that he no longer had the torn pants which had been thrown away by an unknown person.