**Santiago Briceno SILVA, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–98–221–CR.**

Court of Appeals of Texas,
Waco.

June 23, 1999.

Mark D. Griffith, Waxahachie, for appellant.

Joe F. Grubbs, District Attorney, Cynthia W. Hellstern, Asst. District Attorney, Waxahachie, for appellee.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## O P I N I O N

BILL VANCE, Justice.

Santiago Silva pled not guilty to a charge of murder. He was convicted by a jury and sentenced to life imprisonment. He appeals, asserting four issues for review. For simplicity, we will group his points into two issues:

▶ the court erred in denying his request for a mistrial after the jury saw him in handcuffs, shackled, and wearing a "belly-chain"; the incident was not "fortuitous" or "inadvertent";

▶ the court erred in denying his motion for a directed verdict because the evidence is legally and factually insufficient to support the conviction.

We will affirm the judgment.

### FACTS

Around 4:00 a.m. on August 24, 1997, Fermine Perez was shot and killed while sitting at a kitchen table in Ennis, Texas. Although none of the witnesses saw the shooter, the events leading up to the shooting, evidence found at the scene, and a confession all link Silva to the crime.

Perez had a romantic relationship with Carmela Munoz. Carmela's mother, Janet Munoz, had once been Silva's girlfriend. On the evening of August 23, Janet, Carmela, and Perez saw Silva at a dance club in Ennis. Silva asked Janet to leave with him, but she refused. Silva was persistent and, eventually, a fight ensued between Silva and Perez. Janet, Carmela, and Perez then left the club and went to Kristi Malto's house, also in Ennis. Kristi is Janet's daughter and Carmela's sister.

Around 1:30 a.m., Silva showed up at Kristi's house with Alejandro Lopez. Silva told Lopez that he was going to talk to his girlfriend and that he would be back momentarily. Lopez waited in the car. Perez was outside with Kristi's husband, Ivan Maltos, when Silva arrived. Silva, Perez, and Maltos began fighting, but Lopez got out of the car and broke up the fight, "dragging" Silva back into the car. Silva stated that he was going to kill Perez.

Around 3:15 that morning, Lopez dropped Silva off at a house in Corsicana which belonged to Cristobal Briones. Silva asked Briones to allow him to borrow a car, but Briones refused. Although Briones did not give Silva permission to take his car, Silva did so anyway. He did

not bring the car back until approximately 7:00 that morning. In the meantime, around 4:00 that morning, someone shot Perez through an open window in the kitchen. Three .22 caliber casings were found, the markings on which matched the type of bullets fired from a rifle owned by Silva. Briones testified that Silva confessed to shooting a man the next morning. However, Nai Martinez, a woman with whom Silva was living, testified that Silva did not know how to drive a car and was at home around 4:00 the morning of the murder.

## SUFFICIENCY OF THE EVIDENCE

■ Silva's third and fourth issues challenge the legal and factual sufficiency of the evidence to sustain his conviction. Sufficiency of the evidence is measured against the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State,* 953 S.W.2d 234, 238 (Tex.Crim.App.1997).

### Legal Sufficiency

In determining whether the evidence is legally sufficient to support the verdict, we view the evidence in the light most favorable to the verdict, asking whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Weightman v. State,* 975 S.W.2d 621, 624 (Tex.Crim.App.1998); *Lane v. State,* 933 S.W.2d 504, 507 (Tex. Crim.App.1996) (citing *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979)); *Westfall v. State,* 970 S.W.2d 590, 595 (Tex.App.— Waco 1998, pet. ref'd).

The evidence, albeit circumstantial, is sufficient for a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. The events of the evening of August 23 establish that Silva disliked Perez and wanted to fight him. Silva threatened to kill Perez. Although told he could not borrow it, Silva took Briones' car around 3:15 a.m. and did not bring it back until approximately 7:00 that morning. Three .22 caliber casings were found in the grass outside the window

through which Perez was shot. The markings on those casings were consistent with bullets fired from a Ruger .22 caliber rifle, a gun owned by Silva. Silva confessed to Briones that he shot a man and indicated his desire to go to Mexico. Based on this evidence, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Weightman,* 975 S.W.2d at 624. Silva's third issue is overruled.

### Factual Sufficiency

In conducting a factual-sufficiency review, we examine all of the evidence impartially, without the prism of "in the light most favorable to the verdict," and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. State,* 958 S.W.2d 404, 410 (Tex.Crim.App. 1997); *Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996). When performing our review, we give due deference to the fact finder's assessment of the weight and credibility of the evidence. *Calhoun v. State,* 951 S.W.2d 803, 810 (Tex.App.— Waco 1997, pet. ref'd). We will defer to the jury, finding the evidence factually insufficient only where necessary to prevent manifest injustice. *Cain,* 958 S.W.2d at 407.

In challenging the factual sufficiency of the evidence, Silva points to the fact that Briones had a motive to lie. Briones was arrested for aiding Silva and told that he was facing the rest of his life behind bars. Nevertheless, Briones told two of his employers that Silva had confessed to the crime before Briones was arrested. He then told the police. His story never changed. The fact that Briones was arrested and told he was facing a life behind bars prior to giving a statement to the police is a fact that goes to his credibility as a witness. We defer to the jury on such issues. Additionally, Martinez testified that Silva was at home around 4:00 a.m. the morning of the shooting. Again, given the conflicting testimony, the jury could have chosen to disbelieve her. Consider-

ing all of the evidence, we cannot say that the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain,* 958 S.W.2d at 410; *Calhoun,* 951 S.W.2d at 810. Silva's fourth issue is overruled.

## FACTS RELEVANT TO ISSUES ONE AND TWO

On May 13, 1998, the guilt-innocence phase of trial was scheduled to continue for the second day. Around 8:50 in the morning, Silva was taken to the courthouse in handcuffs, shackles, and wearing a "belly-chain." He was seen by at least one man, Mike Hartley, who testified on his behalf. Hartley testified that he saw and heard the chains and shackles Silva was wearing as he walked toward the courthouse. He also testified that a juror was in the vicinity and that he believed the juror saw Silva in the shackles.

Richard Sims, a Sheriff's Department employee, testified that he escorted Silva to the courthouse that morning and that he was, in fact, wearing handcuffs, leg shackles, and a "belly-chain." He testified that they walked past the public entrance to the courthouse, but that they entered the courthouse through a private entrance which is typically used for inmates. Sims testified that he took Silva to the courtroom by the most direct route available. Sims removed the shackles prior to entering the courtroom. Sims testified that he followed the Sheriff's Department policy of handcuffing and chaining inmates while transporting them. He said that this is done for security reasons. Sims testified that there is no possible way to avoid the public and move a prisoner in accordance with the Sheriff's policies and rules.

The trial court took judicial notice that Silva was brought into the courthouse through the only private entrance available. The court stated that Silva was transported in the manner intended by the court and acknowledged that the door was right next to the public access door. Finally, the court acknowledged on the record that the jurors were instructed on the presumption of innocence during voir dire and that all potential jurors stated that they would presume Silva's innocence. The court asked Silva if he wished to question any of the jurors regarding what they saw, but Silva declined. His motion for mistrial was then overruled.

## THE LAW

■ Silva argues that restraints should not have been used outside the courthouse. In *Marquez v. Collins,* 11 F.3d 1241 (5th Cir.1994), the Fifth Circuit noted that "the indecorous appearance of a shackled defendant in an American trial demands close scrutiny of the practice." *Id.* at 1243–44. In considering the question of the necessity of restraints, the Court suggested a "case-specific" assessment of the question balancing the State's interest of safety and decorum against the prejudicial risk that seeing the defendant in restraints might affect the jury's verdict. *Id.* Thus, we give this issue "close scrutiny."

■ In *Clark v. State,* the Court of Criminal Appeals noted that, absent a manifest need, requiring an accused person to wear handcuffs before the jury may infringe upon his constitutional presumption of innocence. *Clark v. State,* 717 S.W.2d 910, 918–19 (Tex.Crim.App.1986) (citing *Moore v. State,* 535 S.W.2d 357 (Tex.Crim.App.1976)). Although every opportunity to avoid allowing the jury to see the defendant in restraints must be taken, we find no error in the present case.

First, a "manifest need" for restraints existed because Silva had to be transported to the courthouse. *See Hernandez v. State,* 805 S.W.2d 409, 414–15 (Tex.Crim. App.1990). Safety and concern for the public dictate that restraints be used. Second, Silva was not "before the jury," but rather was outside the courthouse at the time of the alleged viewing. Although not "paraded" in front of the jury, Silva could potentially be seen by one or more jurors. The court took judicial notice of the fact that Silva entered through the only accessible private doorway, indicating

that reasonable precautions were taken to avoid exposing him to potential jurors.

It is not clear from the record whether any of Silva's jurors saw him in restraints. He declined to call any jurors to testify. Even assuming that one juror saw Silva as indicated by Hartley's testimony, the sighting by a single juror under the described circumstances "shows the fortuity of the event." *See Gonzalez v. State*, 966 S.W.2d 804, 807–08 (Tex.App.—Amarillo 1998, pet. granted). A momentary, inadvertent, and fortuitous encounter away from the courtroom between a hand-cuffed accused and one or more jurors need not result in a mistrial. *Clark*, 717 S.W.2d at 918–19; *Wright v. Texas*, 533 F.2d 185 (5th Cir.1976).

There is no evidence that a juror in Silva's case saw him in restraints. Even if one did, the sighting was fortuitous. Thus, we find the court committed no error in failing to grant a mistrial. Silva's first and second issues are overruled.

Having overruled all of Silva's issues, we affirm the judgment.