Tony Lynn Burnham v. State of Texas















IN THE
TENTH COURT OF APPEALS
 

No. 10-98-126-CR

     TONY LYNN BURNHAM,
                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                              Appellee
 

From the 87th District Court
Freestone County, Texas
Trial Court # 97-142-CR
                                                                                                                
   
O P I N I O N
                                                                                                                
    
      Tony Lynn Burnham was convicted of bail jumping—failure to appear. See Tex. Pen.
Code Ann. § 38.10 (Vernon 1994). The court assessed punishment at twenty-five years’
imprisonment. He appeals, asserting that the evidence is factually insufficient to support his
conviction. We will affirm the judgment. 
FACTS
      In 1997, Burnham was arrested for burglary of a habitation. See id. § 30.02 (Vernon
1994 & Supp. 1999). He was released from custody on a $3,000 bond. He furnished the
sheriff’s office with a Fort Worth address as his residence, but gave a different address, one
belonging to his sister, to the bail bondsman, Frankie Chapman. Burnham did not give either
the Sheriff’s office or the bail bondsman his parents’ address.
      On February 26, 1997, Burnham was indicted for the burglary offense and his bail was
raised to $25,000. Notices of a court date for arraignment were mailed to the address he had
given to the sheriff’s office and to Chapman. The notice sent to the address given to the
sheriff’s office was returned as undeliverable with the notation, “no such number.” Chapman
received the notice mailed to his office and sent an additional notice to the address he had been
given. That notice was not returned. Deborah Sauceda, Burnham’s sister, testified that she
received the notice but did not give it to Burnham until after the court date had passed. She
testified that she and Burnham had a fight, after which he moved out of her house, and she was
unable to contact him. Several of Burnham’s family members testified that he was surprised
and angry when he found out about the missed court date. 
      Deanne Martinez, Chapman’s employee, testified that she spoke with Burnham on the
phone two times prior to the court date and reminded him of it on both occasions. She also
explained to Burnham that his bail had been raised to $25,000. According to Martinez,
Burnham said he would take care of making the new bond. However, there is no record of
those conversations. Burnham did not appear for the arraignment and was later arrested and
charged with “bail jumping—failure to appear.”
SUFFICIENCY OF THE EVIDENCE
      In conducting a factual-sufficiency review, we examine all of the evidence impartially, and
set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to
be clearly wrong and unjust. Harris v. State, 994 S.W.2d 927, 932-33 (Tex. App.—Waco
1999, pet. ref’d) (citing Cain v. State, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997), and
Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996)). When performing our
review, we give due deference to the fact finder’s assessment of the weight and credibility of
the evidence. Id. (citing Calhoun v. State, 951 S.W.2d 803, 810 (Tex. App.—Waco 1997,
pet. ref’d)). We will find the evidence factually insufficient only where necessary to prevent
manifest injustice. Id.
      Section 38.10 of the Penal Code provides:
      (a)  A person lawfully released from custody, with or without bail, on condition that he
subsequently appear commits an offense if he intentionally or knowingly fails to
appear in accordance with the terms of his release.

Tex. Pen. Code Ann. § 38.10(a). Burnham concedes that he failed to appear. He disputes
that the evidence is sufficient to establish that such failure was intentional or knowing. 
      The evidence shows that Burnham gave the Sheriff’s office a false address. Although
Burnham’s sister testified that she did not give him the mailed notice, and his family members
testified that he was surprised and angry that he had missed the court date, Martinez testified
that she told him of the date in a phone conversation the week before he was to appear. 
Although there is no documentation of this conversation, Burnham’s father corroborated this
testimony by testifying that he took Burnham to a pay phone to call Chapman’s office once a
week, including the weeks prior to the arraignment date. The jury could have chosen to
believe that Burnham was informed of the increase in bail and the court date and intentionally
chose not to appear. The jury also could have believed that Burnham’s sister and other family
members were mistaken when they testified that Burnham did not know of the court date. 
      Considering all the evidence, we cannot say that the verdict is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. Harris, 994 S.W.2d
at 932-33. 
      We affirm the judgment.
 
                                                                       BILL VANCE
                                                                       Justice

Before Chief Justice Davis,
          Justice Vance, and
          Justice Gray
Affirmed
Opinion delivered and filed January 19, 2000
Do not publish



 historical facts that depend on credibility choices, but review its
application of the law of probable cause de novo. Id. Because probable cause to support the
issuance of the warrant is determined from the “four corners” of the affidavit alone, there are
no credibility choices to be made by the trial court in examining the sufficiency of an affidavit
to establish probable cause. Wynn, 996 S.W.2d at 326-27; see Massey, 933 S.W.2d at 148. 
Thus, we review the court’s ruling on the motion to suppress de novo. Wynn, 996 S.W.2d at
326; Wachter, 961 S.W.2d at 600. That is, we apply the same standard that the trial court
applied when it evaluated the magistrate’s decision to issue the search warrant on the basis of
the challenged affidavit.
      That standard requires us to examine the totality of the circumstances when considering
whether the facts alleged in the affidavit establish probable cause. Illinois v. Gates, 462 U.S.
213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); Ramos, 934 S.W.2d at 362-63. The
issuing magistrate is entitled to draw reasonable inferences from the facts stated in the
affidavit, and we, as a reviewing court, are required to accord those inferences great
deference. Ramos, 934 S.W.2d at 363; Wynn, 996 S.W.2d at 326-27. If “the magistrate had a
‘substantial basis for ... conclud[ing]’ that a search would uncover evidence of wrongdoing,
the Fourth Amendment requires no more,” and we should find the affidavit sufficient. See
Gates, 462 U.S. at 236, 103 S.Ct. at 2331 (quoting Jones v. United States, 362 U.S. 257, 271,
80 S.Ct. 725, 736, 4 L.Ed.2d 697 (1960)).
The affidavit in support of a search warrant
      In the affidavit supporting her request for a search warrant, dated November 23, 1998,
Hix relayed the information from her November 19 interview of T.H. and K.H., stating,


 in
part:
6.[T.H.] began to tell the Affiant that on 11/09/98, Stephen dropped off all the
other children but didn’t drop her off. Instead Burke drove to the city park. [T.H.]
stated that Burke pulled over and showed her a small box. Burke opened the box and
removed a necklace. [T.H.] stated that she hugged Burke for giving her the necklace
and he then put the necklace on her. [T.H.] stated that after Burke put the necklace
on he kissed her on the back of the neck. [T.H.] stated that Burke told her that he
was not joking. [T.H.] pushed him away and Burke drove her back to school.
 
7.[T.H.] told the Affiant that Burke keeps nude photos on his dark gray labtop
computer that is hooked up the computer in the house, 607 Traci Drive. [T.H.] told
the Affiant that Burke showed her some photos that Burke had made. [T.H.] stated
that Burke showed her three (3) photos of nude females with her head pasted on them.
[T.H.] stated that Burke told her that he bets thats what her body looked like naked.
[T.H.] stated that Burke told her that he had the pictures hidden so that he can look at
them and think of her. [T.H.] told the Affiant that Burke has shown her a movie of
the Internet of people having sex.
 
8.[T.H.] told the Affiant that she spoke to her little sister, [K.H.], and discovered
that Burke had touched her genitals.
 
9.At approximately 1030 hours, Affiant met with [K.H.] and [her mother] at the
Police Department. Affiant asked [K.H.] to tell her about Burke. [K.H.] stated that
she liked Burke until he did something bad to her she didn’t like. [K.H.] stated that
she was playing games on the computer at the Burke’s house and Stephen was present
in the room. [K.H.] stated that Stephen began reading her nasty stories and showing
her pictures of naked people having sex. [K.H.] told Affiant that as Burke read the
stories he began to rub her legs and then worked his hands over the private areas. 
[K.H.] stated that she moved so he would stop. Burke then showed her a picture of a
girl, 4 to 5 years of age. The picture was of a blonde little girl with her leg wide
open. Burke then showed her a picture of two nude females getting on a bed and told
[K.H.] that it reminded him of her and [T.H.]. [K.H.] then stated that Burke put his
hand under her shorts and panties and then put his finger inside her vagina. Burke
continued to feel the rest of her body. [K.H.] stated that Burke would pull his hand
out and lick his finger and then place his hand back under her panties and inside her
part, vagina. 
 
10.[K.H.] stated that the above offense happened between September 1997 and
Halloween 1997.

 

Is the affidavit sufficient to show probable cause?
      Burke argues that the affidavit is insufficient because the only facts that would tend to
show that he possessed child pornography involved an incident that occurred in September or
October 1997, more than a year before the warrant was issued. He argues that this
information was stale. 
      However, the affidavit states that T.H. told Hix she had seen Burke as recently as ten days
before the interview. Also, according to the information in the affidavit supplied by T.H.,
“Burke keeps nude photos on his dark gray laptop computer,” a statement that indicates the
continuing and recent presence of pornography. 
      Furthermore, the affidavit recites that among the photos T.H. said Burke had were three
pictures with T.H.’s head “pasted” onto a nude body. Burke does not challenge whether it
would be reasonable for the magistrate to conclude that the bodies on which T.H.’s head were
pasted were those of a child. The affidavit indicates that Burke thought the bodies were similar
to T.H.’s body, i.e., similar to a fifteen-year-old girl’s development. Thus, although not
clearly stated in the affidavit, we believe that the magistrate could have reasonable inferred that
the photos on which T.H.’s head was superimposed were actually photos of the nude bodies of
children. Additionally, given Burke’s other comments about the photo, as related by T.H.
through Hix’s affidavit, the magistrate could have reasonably inferred that the pictures
contained lewd exhibition of the genitals of the children. See Carmell v. State, 963 S.W.2d
833, 837 (Tex. App.—Fort Worth 1998, pet. ref’d) (finding the area that becomes covered
with hair at the time of puberty to be anatomically part of the female genitalia), rev’d on other
grounds, ___ U.S. ___, 120 S.Ct. 1620, 146 L.Ed.2d 577 (2000). We conclude, then, that the
magistrate could have reasonably inferred, based on T.H.’s statements repeated in the
affidavit, that Burke had child pornography on his computer in the fall of 1998. See Tex.
Pen. Code Ann. §§ 43.25(a)(2), 43.26 (Vernon Supp. 2000);


 Gates, 462 U.S. at 236, 103
S.Ct. at 2331; Ramos, 934 S.W.2d at 362-63; Wynn, 996 S.W.2d at 326-27. 
      The facts stated in the affidavit supporting the issuance of the search warrant were not
stale. The trial court properly rejected the motion to suppress the evidence seized under the
warrant. We conclude that Burke’s first issue is without merit.
DATE OF THE AGGRAVATED SEXUAL ASSAULT
      In an attack directed only to his conviction for aggravated sexual assault, Burke claims that
there is a fatal variance between the allegations in the indictment and the evidence at trial. The
State charged Burke with assaulting K.H. “between the 1st day of September, 1997 and the 1st
day of November, 1997[.]” Burke argues that the State was required to prove that the offense
took place between these two dates because it did not allege that it occurred “on or about”
those dates. C.f. Mireles v. State, 901 S.W.2d 458, 459 (Tex. Crim. App. 1995) (holding that
when the State alleges that the date of the offense was “on or about” a certain date, it is only
required to show that the offense occurred before the indictment was handed down but within
the statue of limitations period). According to Burke, the evidence is insufficient to meet this
requirement because K.H. ultimately testified that she was uncertain as to which month the
assault took place. 
      Burke’s complaint is without merit because the evidence is sufficient to sustain a finding
that the assault took place within the date range alleged in the indictment.


 In determining
whether the evidence is legally sufficient to support the verdict, we view the evidence in the
light most favorable to the verdict, asking whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt. Lane v. State, 933 S.W.2d
504, 507 (Tex. Crim. App. 1996) (citing Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S.Ct.
2781, 2788-89, 61 L.Ed.2d 560 (1979)).
      K.H. testified that the assault took place in the “fall” of 1997. She was allowed to read to
the jury a statement she gave the police, in which she said that the assault occurred at the “end
of September, early October.” Additionally, Burke’s confession was read to the jury. In his
confession, he admitted to assaulting K.H. “sometime before Halloween” in 1997. Although
K.H. vacillated on the date in her testimony, at first asserting that it occurred in November
1997, then in September 1997, and finally admitting that she was not sure of the month, her
testimony, her statement that was read to the jury, and Burke’s confession were sufficient to
allow a rational trier of fact to find that the assault occurred between the 1st day of September,
1997 and the 1st day of November, 1997. Id. Thus, the evidence is legally sufficient to
sustain Burke’s conviction, even without an “on or about” allegation. 
      Burke’s second issue is meritless.
 

CONCLUSION
      We have found that the trial court correctly denied Burke’s motion to suppress the
evidence and that the evidence is legally sufficient to sustain his conviction for aggravated
sexual assault under the allegations of the indictment. Thus, having considered and rejected
each of Burke’s complaints, we affirm the judgments.
 
                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Davis
          Justice Vance, and
          Justice Gray
Affirmed
Opinion delivered and filed August 30, 2000
Publish