Timothy Quintana v. State
















IN THE
TENTH COURT OF APPEALS
 

No. 10-01-257-CR

     TIMOTHY QUINTANA,
                                                                         Appellant
     v.

     THE STATE OF TEXAS,
                                                                         Appellee
 

From the 208th District Court
Harris County, Texas
Trial Court # 823,310
                                                                                                                
                                                                                                         
O P I N I O N
                                                                                                                

      Timothy Quintana appeals his conviction for aggravated robbery; he was sentenced to 28
years’ confinement. Quintana raises four points of error for our review. Finding no error, we
will affirm the judgment.
FACTUAL AND PROCEDURAL BACKGROUND
      In September 1999, Jaime Chavez Trevino (Chavez) and his wife, Ramona Silva (Silva), and
their three children and Silva’s cousin, Jeremy Hernandez (Hernandez), lived together in an
apartment at the Shenandoah Woods apartment complex in Houston. Chavez and his wife had
been saving money to open up a “portable taqueria.”


 They had saved almost $1,500 which was
kept by Chavez’s mother-in-law.
      At approximately 2:00 a.m. on September 11, Chavez heard someone knocking on the front
door of his apartment; he looked out the window in his children’s bedroom and saw two
individuals. He recognized one of the unexpected visitors as Timothy Quintana (Quintana), but
he did not know the woman with him. Silva, who was eight and one-half months pregnant, the
three children, and Hernandez were sleeping when Quintana arrived. Through the window,
Chavez told Quintana to come back another time, but Quintana refused to leave. Reluctantly,
Chavez opened his front door and told Quintana once more to leave, but Quintana became agitated
and brandished a gun. Chavez struggled with Quintana to take the gun away from him but was
unsuccessful.
      Quintana forced Chavez back into the apartment where Hernandez, who had been sleeping,
woke up. Quintana asked Chavez where the money for the taqueria was, and he responded that
there was no money in the apartment. Hernandez told the woman that the money was not there. 
Quintana and the woman searched the apartment for the money and found nothing. Quintana
followed Chavez into the bedroom where his wife and youngest child were sleeping. Quintana
kept asking Chavez to give him the money, and he threatened to kill Silva and the child. Chavez
begged Quintana to kill him but spare his family.
      Quintana held the gun to Chavez’s back while escorting him outside of the apartment. 
Quintana walked Chavez through the complex, passing a bystander. Quintana stole Chavez’s
bracelet and wallet. Quintana asked Chavez for the money once again and threatened to kill him
if he did not produce it. Patsy Ball (Ball), one of Chavez’s neighbors, saw what was going on and
yelled out, saying she had called the Houston Police Department for help. Quintana immediately
ran away and got into a car that his female companion was driving; the duo sped off towards the
parking lot exit. Houston police officer G.C. Wallace arrived and stopped the get-away car inside
the complex. The officer held Quintana and the woman at bay while other officers arrived. After
Chavez told the police what had happened, Quintana was arrested. The police, however, did not
find the gun used during the robbery.
      Around 4:00 a.m., after the police had left, Chavez and Ball searched for the gun inside the
complex. They found it hidden underneath shrubbery near the parking lot exit. Later, Officer
Wallace returned to the complex, and Chavez showed him the gun they had discovered, which was
unloaded. The officer took the weapon as evidence.
      Quintana was indicted for the felony offense of aggravated robbery. Tex. Pen. Code Ann.
§ 29.03 (Vernon 1994). He pled not guilty and was tried before a jury, which found him guilty
and assessed punishment at 28 years’ confinement. Quintana filed a motion for new trial which
was overruled by operation of law. He then brought this appeal.
      Quintana complains on appeal that the evidence is legally and factually insufficient to convict
him because (1) the State did not prove he committed an offense against “Jaime Chavez” as
alleged in the indictment, but rather the evidence pertained to an offense against “Jaime Chavez
Trevino,” (points of error 1 and 2), and (2) the witnesses against him were not credible (points
of error 3 and 4).
POINTS (1) AND (2)Quintana’s first and second points of error claim that the evidence is legally and factually
insufficient to support his conviction in that the State failed to prove that an individual named
“Jaime Chavez,” as alleged in the indictment, had been assaulted. The indictment alleged in part:
[That Quintana] did then and there unlawfully, while in the course of committing theft
of property owned by Jaime Chavez and with intent to obtain and maintain control of the
property, intentionally and knowingly threaten and place Jaime Chavez in fear of
imminent bodily injury and death, and [Quintana] did then and there use and exhibit a
deadly weapon, to-wit: a firearm.

(Emphasis added). Quintana argues that the State was required to prove that the complainant of
the alleged offense was named “Jaime Chavez.” He notes that when the complainant testified at
trial, he introduced himself as “Jaime Chavez Trevino.” According to Quintana, neither the State
nor his defense counsel questioned the complainant about the difference in his name. Thus,
Quintana contends that the evidence is insufficient that he assaulted a complainant by the name of
“Jaime Chavez.”
Standard of Review
      When a sufficiency-of-the-evidence claim, legal or factual, is based on an assertion that the
evidence at trial proved a fact different from what is alleged in the indictment, i.e., there was a
“variance,” our review begins with a determination of whether the variance is “material,” also
called a “fatal” variance. Gollihar v. State, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001); accord
Fuller v. State, No. 1283-98, slip op. at 5-7, 2002 WL 459834, at *2-3 (Tex. Crim. App. Mar.
27, 2002). A variance is material if the indictment (1) failed to inform the defendant of the charge
against him sufficiently to allow him to prepare an adequate defense at trial, or (2) does not
describe the offense clearly enough to protect the defendant from being subjected to the risk of
later prosecution for the same crime. Gollihar, 46 S.W.3d at 257 (adopting the standard in United
States v. Sprick, 233 F.3d 845, 853 (5th Cir. 2000)); Fuller, supra. If the variance is immaterial,
it is to be disregarded in the sufficiency-of-the-evidence review. Gollihar, 46 S.W.3d at 258.
Analysis
      As for whether Quintana was sufficiently informed about who the victim was, we have
reviewed the record and found these references by witnesses about the name of the complainant:
● The complainant testified that his name is “Jaime Chavez Trevino.” He also said that
his friends and family call him “Jimmy,” “James,” or “Jaime.”
 
● Ramona Silva, the complainant’s wife, said her husband’s name is “Jaime Chavez.”
 
● Jeremy Hernandez said the complainant’s name is “Jaime Chavez.”
 
● Patsy Ball said the complainant’s name is “Jaime Chavez.”
 
● The complainant told Officer Wallace that his name is “Jaime Chavez.”
 
● Sgt. John Roberts, an investigator in the “Home Invasion Squad” of the Houston
Police Department, referred to the complainant as “Mr. Chavez.”

      There is no indication in the record that Quintana did not know what person the State was
claiming he stole from and assaulted, or that Quintana was misled by the allegation concerning the
complainant’s name or surprised by the complainant’s testimony that his name is also “Jaime
Chavez Trevino.” Quintana did not attempt to raise a defense that he did not assault the
complainant named in the indictment, i.e., that the State had misidentified the victim. Rather,
Quintana admitted going to Chavez’s apartment on September 11, 1999, but claimed that the two
men were fighting over a drug transaction gone awry.
      Neither does the additional surname of “Trevino” to the complainant’s name subject Quintana
to the risk of being prosecuted later for the same crime. He is in no danger of being prosecuted
again for aggravated robbery of the same complainant proved at trial. Gollihar, 46 S.W.3d at 258
(citing United States v. Apodaca, 843 F.2d 421, 430 n.3 (10th Cir. 1988) (entire record, not just
indictment, may be referred to in protecting against double jeopardy in event of subsequent
prosecution)).
      We hold the variance was not material and, therefore, should be disregarded in a sufficiency
of the evidence review. Because Quintana’s insufficiency claim is based solely on the variance,
our inquiry is ended. An immaterial variance is disregarded in a sufficiency-of- the-evidence
review. Gollihar, 46 S.W.3d at 258. We overrule points (1) and (2).
POINTS (3) AND (4)
      Quintana’s points (3) and (4) contend that the evidence is legally and factually insufficient to
support his conviction, because the complainant’s testimony incriminating him was not credible. 
The recitation of the facts as stated in the beginning of our opinion is a summary of the evidence
concerning what Quintana did to the complainant in the early morning hours of September 11 and
is based on our review of the record. We incorporate those facts in this review of the evidence.
Legal Sufficiency Challenge
      Quintana’s point (3) alleges that the evidence is legally insufficient to support his conviction
because the complainant’s testimony was simply not credible. In a legal-sufficiency-of-the-evidence review, however, “all of the evidence is viewed in a light favorable to the verdict, to
determine whether any rational jury could find the essential elements of the offense beyond a
reasonable doubt.” Cardenas v. State, 30 S.W.3d 384, 389-90 (Tex. Crim. App. 2000) (emphasis
in original). Therefore, the complainant’s testimony about what Quintana did to him that morning
is to be viewed in a “light favorable to the verdict” of guilty. Id. And because the jury is the
exclusive judge of the credibility of witnesses and the weight to be given their testimony, we find
that the evidence is legally sufficient to support Quintana’s conviction. Tex. Code Crim. Proc.
Ann. art. 38.04 (Vernon 1979); Rachal v. State, 917 S.W.2d 799, 805 (Tex. Crim. App. 1996). 
Thus, we overrule Quintana’s point (3).
Factual Sufficiency Challenge
      In conducting a factual-sufficiency review, we examine all of the evidence impartially, without
the prism of “in the light most favorable to the verdict,” and ask whether a neutral review of all
the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously
weak as to undermine confidence in the jury's determination, or the proof of guilt, although
adequate if taken alone, is greatly outweighed by contrary proof. Johnson v. State, 23 S.W.3d
1, 11 (Tex. Crim. App. 2000); Cain v. State, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997);
Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). When performing our review,
we give due deference to the factfinder’s assessment of the weight and credibility of the evidence. 
Calhoun v. State, 951 S.W.2d 803, 810 (Tex. App.—Waco 1997, pet. ref’d). We will defer to
the jury, finding the evidence factually insufficient only where necessary to prevent manifest
injustice. Cain, 958 S.W.2d at 407.
      Quintana argues his factual-insufficiency claim in his brief by stating that “the complainant’s
testimony was simply not credible [and] the jury’s finding [of guilty] was against the greater
weight and preponderance of the evidence.” (Appellant’s Brief P. 27).
      A person commits aggravated robbery if the person commits robbery, as defined in the Penal
Code, and the person uses or exhibits a deadly weapon. Tex. Pen. Code Ann. § 29.03(a)(2). 
“Robbery” is the unlawful appropriation of the corporeal personal property of another with intent
to deprive such other person of that property. Id. § 31.03(a) (Vernon Supp. 2002). The
complainant testified that Quintana displayed a firearm at the outset of their encounter with each
other. A firearm is a deadly weapon. Dowdle v. State, 11 S.W.3d 233, 237 (Tex. Crim. App.
2000). The complainant also testified that Quintana stole his bracelet and wallet from him which
means Quintana committed robbery as defined above. Accordingly, Chavez’s testimony was
sufficient to establish that Quintana committed the offense of aggravated robbery.
      Moreover, as noted already, when performing our review, we give due deference to the
factfinder’s assessment of the weight and credibility of the evidence. Calhoun, 951 S.W.2d at
810. In other words, because there was no evidence which showed that Quintana did not commit
the offense, the factfinder in this case must have accorded the complainant’s testimony credibility
in reaching a verdict of guilty. Therefore, we find the evidence to be factually sufficient to
support Quintana’s conviction. And we overrule his point (4).
CONCLUSION
Having overruled all of Quintana’s points of error, we affirm the judgment.
 
                                                                         BILL VANCE
                                                                         Justice

Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Affirmed
Opinion delivered and filed May 15, 2002
Do not publish
[CRPM]