Johnny GONZALEZ, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 07–97–0062–CR to 07–97–0065–CR.

Court of Appeals of Texas,
Amarillo.

April 3, 1998.

L. Van Williamson, Attorney at Law, Amarillo, for appellant.

Terry McEachern, District Attorney, Plainview, (Robert W. Kinkaid, Assistant, District Attorney), for appellee.

Before BOYD, C.J., and DODSON and REAVIS, JJ.

BOYD, Chief Justice.

Appellant Johnny Gonzalez presents 12 issues which, he says, require reversal of his convictions of four separate offenses which were consolidated into one trial. In our cause number 07–97–0062–CR, the trial court's cause number A2965–9602, he was convicted of aggravated robbery and sentenced to 99 years confinement in the Texas Department of Criminal Justice, Institutional Division (TDCJ–ID) and fined $5,000; in our cause number 07–97–0063–CR, the trial court's number A2966–9602, he was convicted of burglary of a habitation and sentenced to 20 years confinement in the TDCJ–ID and fined $5,000; in our cause number 97–97–0064–CR, the trial court's number A2967–9602, he was convicted of aggravated robbery and sentenced to 99 years confinement in the TDCJ–ID and fined $5,000; and in our cause number 07–97–0065–CR, the trial court's number A2968–9602, he was convicted of robbery and sentenced to 20 years confinement in the TDCJ–ID and fined $20,000. In our discussion, we will refer to the first case as number A2965, the second as number A2966, the third as number A2967, and the fourth as A2968. For reasons we will later explain, we affirm the conviction in each case.

In number A2965, appellant was charged with the aggravated robbery of Jerry Daniels, a clerk at the Allsup's store in Tulia. During the robbery, he allegedly used a knife in a deadly manner and placed Daniels in fear of imminent bodily injury and death. In number A2966, appellant was charged with the offense of entering the habitation of Bobbie Smith with the intent to commit theft. In number A2967, appellant was charged with the aggravated robbery of Bobbie Scott, a person 65 years of age or older, by placing her in fear of imminent bodily injury and death. In number A2968, appellant was charged with the offense of robbery by placing Vanessa Pickering in fear of imminent bodily injury and death in the course of committing theft at the Allsup's store.

Appellant's first six issues are applicable to each case. In those issues, he contends he was deprived of a fair trial as guaranteed by the federal and state constitutions because 1) a biased or prejudiced juror was selected without fault or lack of diligence on the part of defense counsel, 2) jury misconduct occurred when juror Marcella Chavez Sanders made false statements in her jury questionnaire upon which he detrimentally relied in making his strikes, 3) juror Sanders was a victim in a pending sexual assault charge but "she denied that she was a complainant, victim, or witness in a criminal case," 4) appellant was in leg restraints in the presence of the jury venire during voir dire and the jury during part of his trial, 5) without necessity, appellant was in leg restraints in the presence of the jury venire during voir dire and the jury during part of his trial, and 6) appellant's counsel requested leg restraints be removed prior to voir dire and those restraints were not removed until the restraint issue was brought to the court's attention. Because these first six issues are related to all of the convictions, we will discuss them generically.

The gist of appellant's first three challenges is that juror Sanders, who was a complaining witness and victim in a pending sexual assault case in Potter County, marked the wrong box on the juror information sheet

and did not indicate she was a complainant in that pending case. Her status as a complainant, appellant contends, placed her in the same or similar circumstance as each of the alleged victims in the instant cases, i.e., a victim of an assaultive crime. Because defense counsel was not made aware of her pending case, appellant reasons he was deprived of the opportunity to explore the existence of prejudice or bias on her part. Thus, he concludes, he was deprived of the opportunity to knowingly and intelligently exercise his jury strikes.

The jury voir dire examination is not an exercise to test the ability of defense counsel to joust with a prospective juror in an attempt to see what quantum of information he may or may not be withholding. *Jones v. State*, 596 S.W.2d 134, 137 (Tex.Crim.App. 1980). Rather, the voir dire process is designed to ensure, to the fullest extent possible, that an intelligent, alert, disinterested, impartial, and truthful jury will perform the duty assigned to it by our judicial system. *Id.* (citing *De La Rosa v. State*, 414 S.W.2d 668, 671 (Tex.Crim.App.1967)). When a juror withholds material information in the voir dire process, the parties are denied the opportunity to intelligently exercise their challenges, thus hampering their selection of a disinterested and impartial jury. *Salazar v. State*, 562 S.W.2d 480, 482 (Tex.Crim.App. 1978). However, defense counsel has an obligation to ask questions calculated to bring out the information which might be said to indicate a juror's inability to be impartial and truthful. *Armstrong v. State*, 897 S.W.2d 361, 363–64 (Tex.Crim.App.1995). Unless defense counsel asks such questions, the material information which a juror fails to disclose is not really "withheld." *Id.* at 364.

In contending he has shown reversible error, appellant relies upon *Brandon v. State*, 599 S.W.2d 567 (Tex.Crim.App.1979), *vacated on other grounds*, 453 U.S. 902, 101 S.Ct. 3134, 69 L.Ed.2d 988 (1981); *Von January v. State*, 576 S.W.2d 43, 45 (Tex.Crim.App. 1978); *Herrera v. State*, 665 S.W.2d 497 (Tex. App.—Amarillo 1983, pet. ref'd), and other cases of like ilk. These cases stand for the principle that when a juror has failed to respond to inquiries that would have revealed bias, prejudice, or animus toward a given defendant, and the defendant relied upon that silence in good faith, then the defendant was deprived of the opportunity to make a knowing and intelligent use of his jury strikes. *Brandon*, 599 S.W.2d at 577; *Von January*, 576 S.W.2d at 45 (citing *Norwood v. State*, 123 Tex.Crim. 134, 58 S.W.2d 100 (1933)); *Herrera*, 665 S.W.2d at 501 (citing *Norwood v. State*, 123 Tex.Crim. 134, 58 S.W.2d 100, and *Salazar v. State*, 562 S.W.2d 480). However, in each of those cases, counsel had specifically interrogated the jury panel on the matters in question. *Brandon*, 599 S.W.2d at 577; *Von January*, 576 S.W.2d at 44; *Herrera*, 665 S.W.2d at 502. That is not the case here. During this jury voir dire examination, neither party inquired if any member of the jury panel was a complaining witness or a victim in a criminal prosecution.

■ That being true, the question for our decision is whether juror Sanders's failure to disclose on her jury questionnaire that she was the victim and complaining witness in a criminal prosecution requires reversal even though the parties failed to ask direct questions during voir dire concerning that very issue. In *Landry v. State*, 879 S.W.2d 194 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd), the court was presented with an analogous situation. In that case, not wishing to embarrass himself, a juror failed to disclose on his jury questionnaire that he had been an accused in an aggravated kidnapping case. *Id.* at 195. Noting that no such specific question had been asked the venire members, the court commented that the juror had not made any affirmative misrepresentations to the questions actually asked and concluded, "[u]nless defense counsel asks such direct questions, we cannot find that a juror withheld material information such as to warrant reversal for juror misconduct." *Id.* We believe the Houston court correctly applied existing law in making that holding. Likewise, in this case, there was no showing that Sanders made any affirmative misrepresentations to questions actually asked during the voir dire examination, nor was there any showing that she kept silent when she should have answered any such questions actually asked. Therefore, no reversible error is shown and appellant's first three issues are overruled.

In his next three issues, appellant contends he is entitled to reversal because he was in leg restraints during "jury *voir dire* and the trial of the case," and "the restraints were not removed in the presence of the jury in the courthouse and courtroom until the restraint issue was brought to the court's attention." The record reveals the following colloquy immediately after the noon recess on the first day of the trial and prior to the jury's return to the courtroom:

> Defense Counsel: This is just for the record. Yesterday during voir dire and this morning up until about 10 minutes ago Mr. Gonzales [sic] was in chains. His legs were chained together. Yesterday I asked the jail about taking them off and they said that they couldn't; that they were suppose (sic) to remain on. I assumed he had done something that indicated he might be a flight risk or something, so I didn't say anything. I just wanted the record to reflect that Mr. McEachern (the prosecutor), once he noticed it, he had them removed about 1:15 today.

> Mr. McEachern: That's true.

> The Court: I will have to admit, I frankly didn't notice because I can't see under the table.

> Defense Counsel: I don't know that the jurors saw him or that the jury panel saw him. He has been brought in back and forth from the jail and I'm not sure who has been able to see.

> The Court: I don't think anybody in the courtroom has noticed it.

> Mr. McEachern: I know they didn't see him just now when I saw him. There were no jurors around when I saw him.

> The Court: I appreciate you doing that because I just flat didn't see.

> Defense Counsel: It didn't occur to me to do anything simply because I thought there may be a reason that the sheriff who has custody of him currently wanted to keep them on.

The colloquy culminated in an instruction by the court to the sheriff to remove the shackles before the jury arrived and reinstall them when the jury had gone.

In support of his challenge, appellant presented the testimony of Sanders who said she had seen appellant outside in the hallways with leg restraints as he was escorted by the deputies every day until the end of the trial. She also said although she might have seen him in the courtroom with the restraints, she "really didn't notice." She further testified that she did not have any preconceived notions of guilt or innocence because of any incidents at trial and was able to presume appellant to be innocent. She only determined appellant's guilt after "everything" was closed.

In arguing reversible error exists, appellant primarily relies upon *Marquez v. Collins*, 11 F.3d 1241 (5th Cir.1994), *cert. denied*, 513 U.S. 881, 115 S.Ct. 215, 130 L.Ed.2d 143 (1994). In that case, the Court noted that "the indecorous appearance of a shackled defendant in an American trial demands close scrutiny of the practice." *Id.* at 1243–44. In considering the question of the necessity of restraints, the Court suggested a "case-specific" assessment of the question balancing the State's interest of safety and decorum against the prejudicial risk that seeing the defendant in restraints might affect the jury's verdict. *Id.* Because the trial judge is uniquely situated to make the decision about the necessity of restraints, the *Marquez* Court also reasoned that the judge's decision "be given considerable discretion" and not upset absent a clear abuse of the judge's discretion. *Id.* In *Clark v. State*, the Texas Court of Criminal Appeals noted the general rule that absent a manifest need, requiring an accused person to wear handcuffs before the jury may infringe his constitutional presumption of innocence. 717 S.W.2d 910, 918–19 (Tex.Crim.App.1986), *cert. denied*, 481 U.S. 1059, 107 S.Ct. 2202, 95 L.Ed.2d 857 (1987) (citing *Moore v. State*, 535 S.W.2d 357 (Tex.Crim.App.1976)). However, the court explicated, it is also true that a momentary, inadvertent, and fortuitous encounter away from the courtroom does not necessarily call for a mistrial or reversal. *Id.* at 919 (citing *Wright v. Texas*, 533 F.2d 185 (5th Cir.1976)). *See also Hernandez v. State*, 805 S.W.2d 409, 415 (Tex.Crim.App.1990), *cert. denied*, 500 U.S. 960, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991).

From the record, it is apparent that appellant's counsel admitted to the trial court that he was not sure if the "jurors saw him or that the jury panel saw him." Moreover, the sighting by a single juror under the described circumstances shows the fortuity of the event. As such, the trial judge did not abuse his discretion in the manner in which he handled the situation. Accordingly, reversal is not required and appellant's fourth, fifth, and sixth issues are overruled.

Case-number numerical continuity requires us to discuss appellant's eighth, ninth, tenth, eleventh, and twelfth issues because they each deal with the cases we have denominated as A2966 and A2967. In number A2966, appellant was charged with the burglary of the habitation of Bobbie Smith. In number A2967, he was charged with the aggravated robbery of Bobbie Scott, a person 65 years of age or older. Scott was deceased at the time of trial. In his eighth issue, he argues he was deprived of his constitutional right to confront and cross-examine Scott. In his ninth, tenth, eleventh, and twelfth issues, he asserts 9) the evidence was legally insufficient to establish beyond a reasonable doubt that he was the person who entered Scott's residence with the intent to commit theft, 10) the evidence is legally insufficient to show that appellant was the person who committed a theft or that he was the person who placed Scott in fear of imminent bodily injury or death, and 11) and 12) the evidence is factually insufficient to sustain his conviction.

The thrust of appellant's eighth issue contention is directed at the admission of the testimony of Scott's daughter, Shirley Wheeler, as to statements made by Scott to her. Wheeler testified that on the night in question, she received a telephone call from her mother, who was over 65. Her mother was "real hysterical" and told Wheeler that she had been robbed and to get over there "quick." Wheeler did so, and when she arrived, Scott was sitting in a chair "shaking and real scared and her purse and everything was still on the floor." She did not tell Wheeler who robbed her but merely said

that "they just opened the door and walked in."

Texas Rule of Criminal Evidence 803(2) iterates certain types of statements which are not excluded by the hearsay rule even if the declarant is available. Subsection (2) of the rule provides that included in those admissible statements are excited utterances. It defines those utterances as "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Tex.R.Crim.Evid. 803(2).

The critical factor in determining when a statement is an excited utterance under Rule 803(2) is whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event. *McFarland v. State*, 845 S.W.2d 824, 846 (Tex.Crim.App. 1992), *cert. denied*, 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993). The time elapsed between the occurrence of the event and the utterance is only one factor considered in determining the admissibility of the hearsay statement. *Id.* That the declaration was a response to questions is likewise only one factor to be considered and does not alone render the statement admissible. *Id.* The admissibility of an out-of-court statement under the exceptions to the general hearsay exclusion is within the trial court's discretion. *Coffin v. State*, 885 S.W.2d 140, 149 (Tex.Crim.App.1994). *See generally* Tex. R.Crim.Evid. 801, *et. seq.* It is not unusual to admit statements of a similar nature under this rule from victims who are deceased at the time of trial. *See, e.g., Ross v. State*, 879 S.W.2d 248 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd.). Thus, the trial judge did not abuse his discretion in admitting the statement.

Parenthetically, we have not overlooked that the constitutional question raised by appellant in this appeal differs from his Rule 803 objection at trial. Because of this difference, the State contends nothing was preserved for appellate review. *See* Tex. R.App.P. 52(a).[1] However, even assuming, *arguendo*, the question was otherwise properly preserved for appeal and would present

---

1. Effective September 1, 1997, Rule 52(a) was renumerated as Rule 33.1.

error—a holding we do not make—it is not necessary to discuss it. The statement only concerned an undisputed matter, i.e., that the robbery occurred. Nothing in the statement itself connects appellant with the robbery. Thus, no violation of constitutional right occurred. Appellant's eighth issue is overruled.

In his ninth through twelfth issues, appellant challenges the legal and factual sufficiency of the evidence to sustain his convictions for burglary of Scott's habitation and for robbery of Scott. In particular, appellant complains, the evidence was both legally and factually insufficient to show that appellant was the person who entered Scott's house with the intent to commit a theft and that he caused her to be in fear of imminent bodily injury and death.

In instances in which legal and factual sufficiency questions are properly raised on appeal, it is the initial task of the appellate court to determine the legal sufficiency of the evidence. If the court determines the evidence is legally insufficient, it must render an acquittal judgment. *Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Crim.App.1996). If the appellate court determines the evidence is legally sufficient, it must then determine the factual sufficiency of the evidence. *Id.* at 133–34. The test for determining the legal sufficiency of the evidence is "whether, after viewing the evidence in a light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim.App.1988). The test for determining factual sufficiency is that the reviewing court must review all the evidence without the prism of "in the light most favorable to the prosecution," and set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis*, 922 S.W.2d at 135.

Appellant's confession was duly received into evidence. In pertinent part, it states:

Between 7:30 p.m. and 8:00 p.m. on Thursday February, 9th, 1996, I was walking at North El Paso and 7th Street. I saw a house on the corner of North El Paso and 7th on the east side of the street. It had the light on and the inside door was open. I walked to the door and I saw an old lady sitting in the recliner. The storm door was locked but I jerked it open. I told the old lady that I wanted all of her money. She told me that she did not have any. I asked her where her purse was and she said that she did not have one. I told her that I knew she had one. She said okay, but just don't hurt me. I told her that I promised not to hurt her. She walked into the bedroom south of the living room and she got a purse from behind the door. She gave me a round purse. It was black or brown. I started to look in the purse for some money. She said to give her the purse and that she would give me her money. She gave me three twenty dollar bills, two fives and five ones. Again she told me not to hurt her. I told her I wouldn't, but I wanted her to lie down on the floor. I helped her lay face down in the living room floor. I then ran to Joe Castellon's house south of the lady's house in the same block.

Swisher County Deputy Sheriff Max Whitworth testified that on the day in question, he was called to Scott's residence, which was located at the corner of North El Paso and Northwest 7th Streets in Tulia. Upon his arrival, he talked to Scott and testified that she was "crying" and "she was shaking extremely bad, just very distraught." An ambulance was later called by Scott's daughter.

Guilt may be established by circumstantial evidence. *Nelson v. State*, 905 S.W.2d 63, 64 (Tex.App.—Amarillo 1995, no pet.). In a burglary prosecution, specific intent to steal or commit theft may be inferred from the circumstances. *Moreno v. State*, 702 S.W.2d 636, 641 (Tex.Crim.App.1986). Intent may also be inferred from the defendant's conduct and surrounding circumstances. *Turk v. State*, 867 S.W.2d 883, 887 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd). Suffice it to say that the testimony of the deputy sheriff and Wheeler about Scott's observed physical condition was sufficient to justify the jury's conclusion that Scott was robbed and she was placed in fear of immi-

nent bodily injury and death. Wheeler's testimony about the age of her mother was sufficient to show Scott was over 65. Appellant's confession, coupled with the testimony of the deputy sheriff about the location of Scott's house, is sufficient to show the house was entered without consent and with the intent to commit theft. Thus, the evidence is both legally and factually sufficient to sustain appellant's convictions in regard to the offenses committed against Scott. Appellant's ninth, tenth, eleventh and twelfth issues are overruled.

In his seventh issue, in connection with number A2968, appellant contends he was deprived of his federal and state constitutional rights to confront and cross-examine Vanessa Pickering "about any agreements she may have made with the State to have her pending indictment dismissed prior to this trial." Specifically, appellant says that he discovered after this trial that Pickering was indicted on November 15, 1995, for the offense of injury to a child by striking and burning the child with a cigarette. He also discovered that the indictment was dismissed some 11 months later on October 17, 1997, "in the interest of justice." In response to his pretrial request for criminal histories, he was provided with the criminal history of the alleged victim in another crime but he was not informed about the indictment and subsequent dismissal of those charges. Because of this, appellant argues he was precluded the "opportunity to determine whether the dismissal was due to the state's desire to cleanse its alleged victim and determine if she was aware of the state's reason for dismissal."

Although the record reveals that appellant made a pretrial discovery motion seeking the criminal records of all the State's witnesses and a fairly extensive discussion ensued between the prosecutor, defense counsel, and the judge, the judge never formally granted the motion. However, the record is amply sufficient to show that such a request was made and considered by the court as well as by the prosecution.

In *Ex parte Adams,* 768 S.W.2d 281, 288–291 (Tex.Crim.App.1989), the court had occa-

sion to engage in a discussion of the implications of the *Brady*[2] rule in situations such as this. In that decision, the Court negated distinctions between "no request," "general request," and "specific request" cases and concluded that in each situation, a "materiality" test would be used, *i.e.,* whether there is a reasonable probability but for the failure to disclose, the result of the trial would have been different. *Adams,* 768 S.W.2d at 290. In *Crane v. State,* 786 S.W.2d 338 (Tex.Crim. App.1990), the court further instructed that under the "materiality" test, the key elements that must be shown are 1) suppression of evidence by the prosecution after a request by the defense, 2) the evidence's favorable character for the defense, and 3) the materiality of the evidence. *Id.* at 348. It is in the light of this instruction that we consider the question posed under this issue.

■ The district attorney's testimony is that he did not tell the defense about the indictment and the subsequent dismissal because he did not remember the dismissal at the time of this trial. In explanation, he testified that he handles 2,500 to 3,000 cases per year and "I can't remember all of them." Thus, the only testimony in the record is that the failure to reveal the indictment and its dismissal was inadvertent. He denied that any deal was made with Pickering for her testimony and there is no evidence to the contrary. We have examined Pickering's testimony in detail. It is uncontroverted that she was a clerk at the Allsup's store on the date in question. It is not disputed that a robbery occurred at the store on that night. Pickering's identification of appellant as the malefactor and the surrounding circumstances of the robbery was definite and unshaken after an extensive and vigorous cross-examination. Appellant also confessed to this robbery.

In summary, appellant did not meet the last two prongs of the materiality test, *i.e.,* the dismissal evidence would have been favorable to him and, because of the very strong evidence of his participation, including his confession, would be material to his de-

**2.** *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194,    10 L.Ed.2d 215 (1963).

fense. Appellant's seventh issue is overruled.

In final summary, all of appellant's issues are overruled and the judgments of the trial court are affirmed.