RANGEL V. STATE

NO. 07-01-0023-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

AUGUST 30, 2001

______________________________

JOSE T. RANGEL, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_________________________________

FROM THE 137
TH
 DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2000-434831; HONORABLE CECIL G. PURYEAR, JUDGE

_______________________________

Before BOYD, C.J., and REAVIS and JOHNSON, JJ.

Presenting three points of asserted error, appellant Jose T. Rangel challenges his conviction on two counts of endangering a child and the ensuing punishment, enhanced by virtue of a prior felony conviction, of nine years confinement in the Institutional Division of the Department of Criminal Justice.  In the first two of his issues, appellant argues that the evidence is legally and factually insufficient to sustain his conviction, and in the third issue, he contends that the trial court reversibly erred in admitting hearsay testimony.  For reasons we later recount, we affirm the judgment of the trial court.

Because disposition of both of appellant’s first two issues requires a somewhat detailed discussion of the evidence, we will consider and discuss them together.  In considering appellant’s legal insufficiency challenge, we are required to view the evidence in a light most favorable to the prosecution and then determine if any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.  
Jackson v. Virginia
, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d. 560 (1979).  In considering the factual insufficiency challenge, we must view all the evidence without the prism of “in the light most favorable to the prosecution” and we may only set the verdict aside if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.  
Clewis v. State
, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996).  In performing our review, we must remember that the trier of fact is the sole judge of the weight and credibility of the testimony, and we may not substitute our judgment for that of the jury.  
See Santellan v. State
, 939 S.W.2d 155, 164 (Tex.Crim.App. 1997).  We must also bear in mind that a decision is not manifestly unjust because a factfinder has resolved conflicting views of the evidence in favor of the State.  
Cain v. State
, 958 S.W.2d 404, 410 (Tex.Crim. App. 1997).

The State’s first witness was Lubbock Police Officer Sara Collins, the first officer to respond to a 911 call on the evening in question. At the time she arrived on the scene, “there were five kids running in the front yard and they were all screaming and crying hysterically, and so were two adult females, that were also screaming and crying.”  She also observed “it was hectic at that point.  We didn’t know what we had.”

Collins said that appellant was standing on the front porch, bleeding from the head and “ jumping up and down, screaming and yelling.”  Her attention being drawn to him, she instructed the women to get the children into the house and went over to appellant.  Another officer, Kevin Harbin, her backup, followed her, as well as a third officer, Ed Day, whom she had called as an additional backup.  As they approached appellant, he was very angry, agitated, and upset and kept saying, “I’m going to kill her.”  As they tried to question him, appellant finally told the officers, “I’m going to get a gun and I’m going to kill all of you.”  The officers then drew their weapons and ordered appellant to the ground, where he was handcuffed.  Appellant smelled of alcohol and Collins averred, he “didn’t act like a calm, rational, sober person.”

After appellant was secured, Collins returned to Lucy Sanchez, one of the women with the children, and asked her what had happened.  Sanchez, whom the officer described as being “very upset,” said that appellant had become angry because of an earlier call to the police about a domestic disturbance involving his brother.  The police left because the brother agreed to leave for the night.

According to Sanchez, appellant then began beating on the door of the house in which the women and the minor children were located.  Sanchez recounted that appellant was beating on the door so hard that the door “was moving” and the occupants thought he was going to get in.  When appellant temporarily walked away from the door, the women decided to leave, so Rosie Rubio gathered up all the children and went to their car.  When appellant saw them, he came up to the car, started hitting it with his hands and elbows and demanded they unlock the car.  As appellant was beating on the car, Sanchez called 911 on a cordless phone, told appellant “to stop it,” and hit him on the head with the phone.

Appellant’s attention was then diverted to Sanchez, and he hit her in the face several times with an open hand and knocked her to the ground.  Collins, noticing that the car was damaged, then asked how it got “that way.”  She was informed by one of the children that appellant hit the car with a brick.  Sanchez confirmed this with the additional comments that he was “saying that he was going to kill them all” and that appellant was shattering the car windows and glass was coming in on the occupants, including the children. Officer Collins recovered a brick located by the driver’s side of the car.  After the officers ascertained what had happened, appellant was arrested and taken to jail.

Upon cross-examination, Collins admitted that she was not an eyewitness to the events.  She also stated that a child could have been injured if the brick had gone through the windshield and landed on the dashboard, but that was not “necessarily” true.  An audio tape was introduced into evidence containing two different 911 calls in which the caller says this “man is throwing beer at my car,” he “is messing with my car . . . ,” and “I’ve got my kids in the car and he is kicking my car.”  Although Sanchez had given a statement to the police some two days after the incident and was subpoenaed, she did not appear or testify.  Appellant also did not testify. 

We must first determine whether the evidence is legally sufficient and, if it is not, we must render an acquittal judgment.  
Clewis,
 922 S.W.2d at 133.  If the evidence is legally sufficient, we must then determine if it is factually sufficient when measured by the standard explicated in 
Clewis.  Id. 
 To sustain a conviction for endangering a child, the State must have established that appellant, 1) intentionally or recklessly 2) by act engaged in conduct that placed 3) a child younger than 15 years in 4) imminent danger of death, bodily injury, or physical or mental impairment.  Tex. Pen. Code Ann. § 22.04(c) (Vernon Supp. 2001).  To properly consider the legal and factual sufficiency of the evidence, we must first determine appellant’s third issue, in which he contends the trial court reversibly erred in admitting hearsay testimony from Collins about what Sanchez had told her.

It is axiomatic that in order to preserve error, a defendant must have presented a timely trial objection.  
Ethington v. State
, 819 S.W.2d 854, 858 (Tex.Crim.App. 1991); Tex. R. App. P. 33.1(a).  It is also necessary for a party to object each time inadmissible evidence is offered unless the objecting party has obtained a running objection from the trial judge or has properly objected to all the testimony at a hearing outside the jury’s presence.  
Ethington,
 819 S.W.2d at 858.
  
Any error in admitting evidence is cured if the same evidence is admitted elsewhere without objection. 
 Penry v. State
, 691 S.W.2d 636, 655 (Tex. Crim. App.1985), 
cert. denied
, 474 U.S. 1073, 106 S.Ct. 834, 88 L.Ed.2d 805 (1986); 
Hudson v. State
, 675 S.W.2d 507, 511 (Tex.Crim.App. 1984).

In this case, although appellant did make his hearsay objection to Collins’s initial testimony about one of the children’s response to her question as to how the car and the windows got smashed, he did not object to Sanchez’s testimony about appellant’s activities with the brick. We also note that, during appellant’s cross-examination of Collins, he interrogated her about the brick and received the response that “one of the children told  me . . . about the brick.”  Appellant did not obtain a running objection to the testimony, nor did he object to it in a hearing outside the presence of the jury.

Additionally, Texas Rule of Evidence 803(2) provides that a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition is not excluded by the hearsay rule.  The critical factor in determining whether a statement is an excited utterance is whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event.  
McFarland v. State
, 845 S.W.2d 824, 846 (Tex.Crim.App. 1992), 
cert. denied
, 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993), 
overruled on other grounds
 by 
Bingham v. State
, 915 S.W.2d 9 (Tex.Crim.App. 1994) 
; 
Gonzalez v. State
, 966 S.W.2d 804, 808 (Tex.App.--Amarillo 1998), 
aff’d
, 3 S.W.3d 915 (Tex.Crim.App. 1999).  The time elapsed between the occurrence of the event and the utterance is one factor considered in determining the admissibility of the utterance.  That the declaration was a response to questions is likewise only one factor to be considered, and does not render the statement inadmissible.  
McFarland, 
845 S.W.2d at 846.  The trial court must decide whether evidence is admissible under Rule 803(2), and its decision to admit it is reviewed under an abuse of discretion standard.  
Coffin v. State
, 885 S.W.2d 140, 149 (Tex.Crim.App. 1994).

The court’s decision in 
King v. State
, 953 S.W.2d 266, 268 (Tex.Crim.App. 1997) is also instructive.  In that case, an officer was allowed to testify that a woman at the crime scene “stated to me that a black male that she knew as King [the appellant] . . . possibly killed Billy.”  She also testified that the woman was crying “profusely” and was in an extreme emotional state.  
Id
. at 269.  The 
King
 court held that the evidence was sufficient to justify the admission of the testimony under the excited utterance rule and the trial court did not abuse its discretion in admitting the statement.  
Id
.

Similarly, in this case, Collins averred that, after she got out of her car, she saw that the children were screaming and crying hysterically.  She also described Sanchez’s emotional state as “still very upset, crying, you know, not screaming at me but speaking very loudly and emotionally, emotional.”  Collins also testified that the child who mentioned the brick to her was emotional and  “throughout the entire incident, they were all still upset at the entire situation.”

In contending that the testimony was not admissible, appellant places primary reliance upon 
Schaffer v. State, 
777 S.W.2d 111 (Tex.Crim.App. 1989).
  
In that case, the court held that “backdoor” hearsay was not admissible and in doing so reaffirmed that that type of testimony was subject to the same rules and limitations as the more common form.  
Id. 
at 113.  However, in that case, the court was not dealing with an excited utterance or with the exception to the hearsay rule that permits that type of testimony.  Under this record, the trial court did not abuse its discretion in admitting the testimony in question. Appellant’s third issue is overruled.

As we have noted, in his first two issues, appellant challenges the legal and factual sufficiency of the evidence to sustain his conviction.  We have heretofore recounted the evidence in considerable detail.  Rather than reiterate that evidence, suffice it to say that it was sufficient for the jury to conclude that appellant in his rage and by his actions, engaged in conduct that placed George Sanchez and Renee Guiterrez, children younger than 15 years of age, in imminent fear of bodily injury, physical or mental impairment or death.  It was also sufficient to justify the factfinder in concluding that the children were in the car at the time appellant made his foray upon the car with the brick.  Appellant’s first two issues are overruled.

In sum, all of appellant’s issues are overruled, and the judgment of the trial court is affirmed. 

John T. Boyd

 Chief Justice

Do not publish.