MEMORANDUM OPINION

 

                                                             No.
04-06-00636-CR

 

                                                         Juan Manuel MENDOZA,

                                                                      Appellant

 

                                                                             v.

 

                                                            The STATE of Texas,

                                                                       Appellee

 

                            From
the 79th Judicial District Court, Jim Wells County, Texas

                                                    Trial
Court No. 05-04-11609-CR

                                         Honorable
Richard C. Terrell, Judge Presiding

 

Opinion by:        Rebecca Simmons, Justice

 

Sitting:               Catherine Stone, Justice

Phylis J. Speedlin, Justice

Rebecca Simmons, Justice

 

Delivered and Filed:  December
28, 2007

 

AFFIRMED

            Appellant Juan Manuel Mendoza was convicted by
a jury for the murder of his wife, Sandra Zavaleta, and the trial court
sentenced Mendoza to confinement in the Institutional Division of the Texas
Department of Criminal Justice for a period of twenty-five years.  Mendoza maintains the shooting was accidental and raises issues relating to insufficient
evidence, erroneous admission of evidence, improper jury argument and
ineffective assistance of counsel.  We affirm the judgment of the trial court.

Factual
Background

On
February 4, 2004, at approximately 3:09 a.m., a 911 call to the Jim Wells
County Sheriff’s Department reported that Sandra Zavaleta, Appellant Mendoza’s
wife, had been accidentally shot in the face.  The 911 dispatcher testified the
caller explained that he was cleaning a firearm when Zavaleta “tried to grab
the gun, and it shot her in the face.” 

Two
officers arrived at the Mendoza home where they found Zavaleta, on the bed,
deceased.  Mendoza described the circumstances surrounding the incident to
Officer Joe Martinez[1] explaining
that “he was walking out of the bathroom with the weapons in his hand, and that
the handgun accidentally discharged and struck [Zavaleta] in the face.” 
Captain Enrique Saenz transported Mendoza to the Jim Wells County Sheriff=s Office, where Mendoza provided a written statement regarding the shooting. 

Admission of Evidence

Mendoza asserts the trial court erred in admitting the 911 recording into evidence.  We
review a trial court’s ruling on the admissibility of evidence under an abuse
of discretion standard.  Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000).  As long as the trial court’s ruling was within the zone of
reasonable disagreement, we will not interfere with the ruling. Id.

A.        The
911 Recording

Mendoza contends the trial court abused its discretion by admitting the 911 recording based
on the State’s failure to either identify the caller or show a proper chain of
custody.  Although the Texas Rules of Evidence do not specifically define the
term “chain of custody,” Rule 901(a) provides that, for admissibility purposes,
the authentication or identification of an item is satisfied by evidence that
is sufficient to support a finding that the item in question is what its
proponent claims.  Tex. R. Evid. 901(a);
Silva v. State, 989 S.W.2d 64, 67 (Tex. App.CSan Antonio 1998, pet. ref’d) (explaining that
chain of custody goes to weight and not to admissibility).  Evidence may be
authenticated or identified by different methods, including testimony by a
witness with knowledge that “a matter is what it is claimed to be.”  Tex. R. Evid. 901(b)(1); see also
Angleton v. State, 971 S.W.2d 65, 67-68 (Tex. Crim. App. 1998).  The court
properly admits evidence when a reasonable juror could find that the evidence
has been authenticated or identified.  See Pondexter v. State, 942
S.W.2d 577, 586 (Tex. Crim. App. 1996). 

Here,
the 911 dispatcher testified that, although he neither made the recordings nor
retained custody of the recordings, the two recordings were true and accurate
representations of the calls he received on the evening of the incident.  The
evidence supports the trial court’s determination that Rule 901 was satisfied. 
Tex. R. Evid. 901; see
Angleton, 971 S.W.2d at 67-68 (upholding admission of audiotape when a
witness, with knowledge, testified that the enhanced recording produced at
trial was an accurate copy of the relevant contents of the original
recording).  Accordingly, the trial court did not abuse its discretion in
admitting the testimony. 

B.        Mendoza’s
Statement

Mendoza next contends that his statement was inadmissible because it was not recorded in
accordance with Article 38.22 of the Texas Code of Criminal Procedure.  Tex. Code Crim. Proc. Ann. art. 38.22
(Vernon 2005).  Article 38.22 sets forth the necessary requirements for
admissibility of a written statement.  See id.  To comply with Article
38.22, Section 2, the face of the written statement must show the accused (a)
received certain admonishments and (b) “prior to and during the making of the
statement, knowingly, intelligently, and voluntarily waived the rights set out
in the warning prescribed by Subsection (a) of this section.” Id.  There
is no requirement, however, that an audio or video recording be made of the
statement.

Mendoza provided his statement to Captain Saenz.  The statement was typed and printed; Mendoza’s initials were affixed to each of the statutorily prescribed warnings; and the
statement was signed by Mendoza.  Thus, the face of Mendoza’s written statement
shows compliance with Article 38.22, Section 2.  Id.  An audio or video
recording of the statement was not necessary and, therefore, the trial court
did not abuse its discretion in admitting the statement into evidence.

C.        Crawford and the Sixth Amendment

On
appeal, Mendoza asserts both the 911 recording and the written statement were
admitted in violation of Mendoza’s Sixth Amendment right to confront witnesses
under the United States Constitution.  Specifically Mendoza argues:  (1) the
911 recording was played before the jury prior to identifying the caller B allegedly Mendoza B on the recording; and (2)
the written statement was a selective transcription and inconsistent with Mendoza’s prior oral statements.  Trial counsel’s objection to the introduction of the 911
recording was limited to Mendoza’s inability to confront “the witnesses with
regard to the chain of custody.”  (emphasis added).  No specific objection
was made regarding a lack of confrontation regarding the witness’ actual
testimony.

When
an appellate complaint fails to comport with the trial objection, nothing is
preserved for review.  Tex. R.
Evid. 33.1(a); Swain v. State, 181 S.W.3d 359, 367 (Tex. Crim.
App. 2005); see also Reyna v. State, 168 S.W.3d 173, 179 (Tex. Crim.
App. 2005) (explaining when objection is not sufficiently specific for
preservation of appeal).  This is true even after Crawford v. Washington,
541 U.S. 36 (2004).  See Campos v. State, 186 S.W.3d 93, 98 (Tex. App.CHouston [1st Dist.]
2005, no pet.) (holding that a post-Crawford defendant waives appellate
challenge based on Confrontation Clause for failure to object at trial).  Mendoza raised an objection with regard to the chain of custody and not a Crawford violation
before the trial court.  Accordingly, we do not address the issue on appeal.  Id.; see also Tex. R. App. P.
33.1(a).  

            With
regard to the written statement, Mendoza argues that the lack of an audio
recording of his statement impaired his ability to cross-examine witnesses
about unrecorded gestures made by Mendoza in violation of the Confrontation
Clause.  In Crawford, the Supreme Court held that the Confrontation
Clause bars the admission of out‑of‑court testimonial statements
made by a witness who does not testify, unless the witness is
unavailable to testify and the defendant has had a prior opportunity to cross‑examine
the witness. Crawford, 541 U.S. at 68 (emphasis added).  Therefore, to
implicate the Confrontation Clause, an out‑of‑court statement must
be (1) made by an absent witness and (2) testimonial in nature.  Id.  Here, however,
Texas Ranger Rey Ramon and Captain Enrique Saenz — the officers who took Mendoza’s statement — testified at trial, and Mendoza had the opportunity to confront them
at that time. Because both witnesses testified at trial, no Confrontation
Clause violation is implicated.  

D.        Expert Testimony

Mendoza asserts the trial court erred in admitting the expert testimony of the medical
examiner, as well as the forensic firearms and tool marks examiner.  Mendoza, however, acknowledges that no error was preserved.  See Tex. App. P. 33.1(a).

Although
trial counsel did not object to the testimony of either witness, Mendoza now claims the admission of the expert testimony was fundamental error pursuant to
Texas Rule of Evidence 103(d) (“Fundamental error. Nothing in these rules
precludes taking notice of fundamental errors affecting substantial rights
although they were not brought to the attention of the court.”).  Mendoza, however, makes no attempt to provide any authority wherein courts have found the
same or similar testimony to have been fundamentally erroneous, or to have
caused egregious harm to a defendant.  We decline to accept Mendoza’s request,
and conclude that this issue was not properly preserved for appellate review.  Tex. R. App. P. 38.1(h).  

Even
assuming the issue was properly preserved, the record supports the trial court’s
admission of the evidence.  Construing Mendoza’s brief liberally, although he
asserts the expert testimony was conclusory and unreliable, we interpret his argument
as the experts were unqualified to provide the opinions to which they
testified.  Akins v. State, 202 S.W.3d 879, 892 (Tex. App.—Fort Worth
2006, pet. ref’d) (Livingston, J., concurring) (reiterating that an appellate
court must liberally construe a party’s brief).  Dr. Rey Fernandez testified
regarding his employment as a medical examiner, his education and training, and
his certification as a forensic pathologist.  Thus, there was some evidence
that Dr. Fernandez was qualified to offer opinion testimony as to the cause of
Zavaleta’s death and the path in which the bullet traveled.  See Mays v.
State, 563 S.W.2d 260, 263 (Tex. Crim. App. 1978) (permitting properly
qualified expert pathologist to express his professional opinion on position of
body of decedent at time shot was fired).  Similarly, Richard Hitchcox
testified regarding his employment as a forensic firearms and tool marks
examiner with the Texas Department of Public Safety and his education and
training.  Hitchcox’s testimony supports the trial court’s conclusion that he
was qualified to testify regarding the ballistics tests he performed.  See
Cantu v. State, 994 S.W.2d 721, 731 (Tex. App.CAustin 1999, pet. denied) (concluding that
expert’s experience and training in ballistics would assist jurors to
understand evidence).  

We,
therefore, overrule each of Mendoza’s issues relating to the admission of
evidence.

Jury
Instruction

Mendoza contends the trial court erred by failing to give the jury an instruction on the
voluntariness of his written statement.  An instruction on voluntariness,
however, is not required if there is no evidence from which a reasonable jury
could conclude that the confession was not voluntarily made.  Tex. Code Crim. Proc. Ann. art. 38.22 §
7; see Vasquez v. State, 225 S.W.3d 541, 545-46 (Tex. Crim. App. 2007)
(defense must introduce evidence from which reasonable juror could conclude statement
involuntarily made).  

Mendoza argues his statement was involuntary because he was held “incommunicado,”
interrogated for over four hours, handcuffed at one point, and had paper bags
placed over his hands for a time.  After being transported to the sheriff’s
office, Mendoza provided a statement to officers detailing the shooting.  At
the voluntariness hearing outside the presence of the jury, Mendoza complained
that the handcuffs and paper bags over his hands prevented him from being able
to use the restroom, eat or drink.  Mendoza further denied being read his Miranda
rights, and testified that Saenz told him to sign the statement and “we’ll see
about getting B you
home.” 

There
is no evidence suggesting that Mendoza invoked either his right to terminate
the interview or his right to counsel, or that he showed any hesitation in talking
to the officers about the incident.  The record does, however, affirmatively reflect
that Mendoza initialed the written warnings above his statement, signed the
statement, initialed each page, affixed his thumbprint to the end of the
document and even confirmed that everything in the written statement was
accurate.  The trial court was within its discretion to conclude that Mendoza’s written statement was given voluntarily.  See, e.g., Smith v. State,
779 S.W.2d 417, 428-29 (Tex. Crim. App. 1989) (holding that eight hours of
questioning without food did not render confession involuntary in light of
appellant’s willingness to continue, after being Mirandized, and
understanding his rights); Bell v. State, 169 S.W.3d 384, 391‑92
(Tex. App.CFort Worth
2005, pet. ref’d).  Because the record is silent with regard to any type of
coercion or that Mendoza spoke against his will, he was not entitled to an
instruction on the voluntariness of the statement.  See Janecka v. State,
937 S.W.2d 456, 472 (Tex. Crim. App. 1996) (“Absent some positive
evidence appellant’s statements were coerced, we cannot say the trial court
abused its discretion in failing to give the requested instruction.”).  Thus,
we overrule this issue on appeal.

Disabled Juror

Mendoza next argues the trial court erred in refusing to dismiss a disabled juror and in
failing to grant a mistrial.  After the trial started, a juror approached the
bailiff and inquired whether Mendoza was being “screened” while coming in and
out of the courtroom because she was worried about the jury’s safety.  The
trial court did not interview the juror.  After discussing the incident with
the parties, the trial court overruled Mendoza’s motions for mistrial and
dismissal of the juror.

A.        Standard of review

We
review a trial court’s decision to declare a juror disabled under an abuse of
discretion standard.  Routier v. State, 112 S.W.3d 554, 588 (Tex. Crim.
App. 2003); Gregg v. State, 881 S.W.2d 946, 950 (Tex. App.CCorpus Christi 1994, pet
ref’d).  Likewise, we review the denial of a motion for mistrial under an abuse
of discretion standard.  Dossett v. State, 216 S.W.3d 7, 31 (Tex. App.CSan Antonio 2006, pet.
ref=d) (citing Hawkins
v. State, 135 S.W.3d 72, 76‑77 (Tex. Crim. App. 2004)).

B.        Analysis

            A
juror is considered disabled from sitting on a jury if, after being sworn, the
juror suffers from a physical illness, mental condition, or emotional state
which affects his ability to perform the duties assigned to him as a juror.  Tex. Code Crim. Proc. art.  36.29
(Vernon 2006); Brooks v. State, 990 S.W.2d 278, 286 (Tex. Crim. App. 1999). 
The Court of Criminal Appeals explained that a juror’s disability from sitting
on a jury refers to a physical, mental, or emotional disability.  Ramos v.
State, 934 S.W.2d 358, 369 (Tex. Crim. App.1996).  Without question, a
juror’s fear of retaliation can render a juror disabled when that fear impacts
the juror’s mental condition or emotional state to such a degree as to inhibit
the juror from fully and fairly performing his functions as a juror.  Reyes
v. State, 49 S.W.3d 552, 554 (Tex. App.CHouston
[14th Dist.] 2001, pet. ref’d) (upholding dismissal of juror based on the juror’s
personal “knowledge of the defendant,” fact that the juror was “emotionally
distraught, highly concerned for his own personal safety,” and concerned that
he would be forced to “violate his conscience and not render a proper verdict”). 
The juror in this case, however, did not express any personal knowledge of Mendoza, a fear of retaliation by Mendoza, or an inability to perform her duty as a
juror.  We conclude the trial court did not abuse its discretion in finding the
juror was not disabled and in denying the motion for a mistrial.  We overrule
this issue on appeal.  

Juror Misconduct

Mendoza claims the trial court erred in denying his motion for new trial alleging juror
misconduct.  We review the denial of a motion for new trial under an abuse of
discretion standard.  Salazar v. State, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001).  An appellant is entitled to a new trial “when the jury has engaged
in such misconduct that the defendant did not receive a fair and impartial
trial.”  Tex. R. App. P. 21.3(g).


Construing
his brief liberally, Mendoza states that the jurors
considered “extraneous evidence” that implied the couple had a “propensity for
arguing and fighting.”  See Akins, 202 S.W.3d at 892.  During the
hearing on the motion for new trial, the parties agreed the issue was one of
outside influence.  On appeal, Mendoza appears to add a claim of juror
misconduct by a juror deliberately withholding information.  We will address
both claims. 

At
the hearing on the motion for new trial, one of the jurors testified that jury
conversations included “things . . . which were not in evidence,” such as
Mendoza receiving a large money settlement, frequent arguments between Mendoza
and Zavaleta, and whether Mendoza was screened as he came into the courtroom
each day.  With regard to the couple’s history of fighting, there was some
testimony introduced at trial, specifically through their daughter Cassandra,
that the couple fought.  As to the money settlement, although not introduced at
trial, Mendoza failed to show any such discussion caused an unfair or impartial
trial.  Because Mendoza failed to establish the causal connection between the
alleged misconduct and lack of a fair and impartial trial, Mendoza failed to
meet his burden of proof on the motion for new trial and the trial court
properly denied the motion.  Id. 

We
next address the alleged withholding of information by a juror.  Juror
misconduct may also occur if a juror makes “affirmative misrepresentations to
questions actually asked during the voir dire examination, [or if there is] any
showing that [the juror] kept silent when [the juror] should have answered any
such questions actually asked.”  Gonzalez v. State, 966 S.W.2d 804, 806
(Tex. App.CAmarillo
1998), aff”d, 3 S.W.3d 915 (Tex. Crim. App. 1999).  Mendoza argues that some of the jurors obviously knew him or his family and failed to
disclose that information during voir dire.  

The jury was
asked whether any familiarity with the family would make it difficult to be
fair and impartial.  Mendoza asserts the discussion regarding a monetary
settlement proves impaneled jury members did not answer this question truthfully.
 See Gunter v. State, 858 S.W.2d 430, 443 (Tex. Crim. App. 1993),
rev’d on other grounds, Ex parte Smith, 185 S.W.3d 455,
466 (Tex. Crim. App. 2006) (holding that a juror’s failure to truthfully answer
questions put to him by the court may support a challenge for cause).  Mendoza does not, however, provide any specific evidence that any jurors failed to answer
questions truthfully and we overrule this issue.  See Gonzalez, 966
S.W.2d at 806 (requiring an affirmative misrepresentation to questions actually
asked during the voir dire examination or a showing that the veniremember kept
silent when she should have answered the questions actually asked).

Sufficiency of the Evidence

Mendoza next complains that the evidence was legally and factually insufficient to prove
the requisite culpable mental state for murder.  In relevant part, Section
19.02 of the Texas Penal Code provides that a person commits the offense of
murder when he intentionally or knowingly causes the death of an individual; or
intends to cause serious bodily injury and commits an act clearly dangerous to
human life that causes the death of an individual.  Tex. Pen. Code Ann. § 19.02 (Vernon 2003). 

A.        Standard of Review

When considering a legal sufficiency challenge, we review
all the evidence in the light most favorable to the verdict and determine
whether any rational trier of fact could have found all of the essential elements
of the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979); Hernandez v. State, 198 S.W.3d 257, 260 (Tex. App.CSan
Antonio 2006, pet. ref’d).  We must affirm the trial court’s judgment if any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  McDuff v. State, 939 S.W.2d 607, 614 (Tex.
Crim. App. 1997).  

When considering a factual sufficiency challenge, however,
we view all the evidence in a neutral light and set aside the verdict only if
the evidence is so weak the verdict is clearly wrong and manifestly unjust; or
if the verdict is against the great weight and preponderance of the evidence.  Watson
v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006).  It is the sole
purview of the jury to evaluate the credibility and demeanor of witnesses and
determine the weight afforded contradicting testimony.  Stogiera v. State,
191 S.W.3d 194, 196 (Tex. App.CSan Antonio 2005, no
pet.).  As in most cases, when there is no direct evidence of a defendant’s
intent, the State may establish the necessary intent by circumstantial
evidence.  See Dillon v. State, 574 S.W.2d 92, 94 (Tex. Crim. App.
1978); see also Kutzner v. State, 994 S.W.2d 180, 184 (Tex. Crim. App.
1999) (holding the standard of review for cases involving circumstantial
evidence is the same as when a case is comprised of direct evidence).

B.        Testimony at Trial

Mendoza’s written statement
indicated that he and Zavaleta spent the day of the incident shooting newly
purchased firearms.  That evening, Zavaleta went out with a friend and arrived
home in the early morning hours.  While Zavaleta was out, Mendoza claims he
cleaned Zavaleta=s
DAC 9 mm, an AK 47 and his .45 in the couple’s bedroom.  He explained the
actions immediately preceding the incident:

[I] took off the pistol grips, oil (sic), sprayed it down
and then blow dried and oiled it.  I then loaded (sic) magazine with 7 bullets
and racked them all through the gun to see if they would jam.  The bullets all
went through and fell on the bed.  I picked them back up and then loaded all of
them back into the magazine and left the magazine on the bed, I did not put
(sic) back into the gun.

 

. . . . 

 

I was going to (sic) the guns away and I would go to bed.  I
grabbed the AK47 with my left hand, as it was still leaning up against the bed,
and [then] grabbed the 45 with my right hand.  The 45 went off as I picked it
up and pulled the trigger at the same time.  I dropped both guns on the floor
and looked at the wall, hoping I had hit the wall, but did not see anything.  I
then looked at my wife and saw that she was bleeding from her mouth.

 

Mendoza stated he immediately
called 911.

At trial, Mark Almaraz testified that several people,
including Zavaleta, had been at Almaraz’s house “around 12:00, 1:00 o’clock”
that evening.  At approximately 2:00 a.m., Almaraz knocked on Mendoza’s door,
but received no answer.  As he was driving away, the kids came out of the
Mendoza home screaming “‘I heard a gunshot.’ and ‘My mom was telling my dad to
do this and this and this,’ you know, ‘and, well, my dad was, you know trying
to walk away.”’  He further testified the kids reported “[M]y mom, my dad, they
were arguing.  My mom was telling my dad mostly everything, my dad didn=t
want to do it.”

Gilberto Luna testified that Cassandra, his
step-granddaughter, called the day after the shooting looking for her
grandmother, Blanca Zavaleta, and asked if “we knew what had happened to her
mother.” When he told her no, Cassandra said “her father had thrown her mother
on the bed and fired a shot at her.”  At trial, fourteen-year-old Cassandra
testified that she was asleep in the living room when she was awakened by the sound
of a gunshot.  She denied talking to Luna on the phone or making any statement
to Luna about her parents arguing.

Dr. Fernandez, the medical examiner, noted bruises on
Zavaleta’s thighs.  He also explained the angle of the bullet path indicated
the firearm was at a different height than Mendoza’s statement suggested, and
that the bullet path was more consistent with a shooter standing over a sitting
victim, rather than one lying down.  Moreover, Dr. Fernandez noted the absence
of a gunshot through the pillow under Zavaleta’s head.

Hitchcox, the State’s ballistics expert, testified that “[t]he
firearm will not fire unless you depress the grip safety.” Additionally,
Hitchcox explained that the trigger pull tests he performed revealed that five
and a half to six pounds of pressure was necessary to pull the trigger on the
gun.  In his defense, Mendoza presented evidence that he purchased the firearms
from a pawn shop only a few days before the shooting and Oscar Rosas, Jr.
testified that he was with the couple earlier in the

 

day and that the .45 “went off by itself,” at least twice. 
Rosas further stated the couple did not appear to be fighting. 

C.        Required Mental State

Mendoza asserts the only evidence
supporting the requisite mental state for murder is Luna’s testimony that
Cassandra reported seeing Mendoza throw Zavaleta on the bed and fire a shot at
her.  We disagree.  Intent may be inferred from the conduct of, remarks by, and
circumstances surrounding the defendant’s acts.  See Guevara v. State,
152 S.W.3d 45, 50 (Tex. Crim. App. 2004).  Importantly, intent is a question of
fact and within the sole purview of the jury.  Brown v. State, 122
S.W.3d 794, 800 (Tex. Crim. App. 2003); Rodriguez v. State, 90 S.W.3d
340, 355 (Tex. App.CEl Paso 2001, pet. ref’d).  

Mendoza’s testimony contained several
inconsistencies.  He gave several different versions of the events surrounding
the shooting, including the gun discharged when he walked out of the bathroom
and the gun discharged as he was putting the guns away.  His hands and clothes
were clean, despite his claims of running to his wife “to grab her.”   Mendoza testified that he had cleaned three firearms, but there was no odor of any
cleaning solvents, and the fact that the firearm was found on the bed and not
on the floor was inconsistent with Mendoza’s description.

The State elicited testimony from the ballistics expert, the
medical examiner and Officer Joe Martinez regarding the inconsistencies in Mendoza’s version of the events and the physical evidence at the scene of the crime. 
Officer Martinez further described Mendoza’s demeanor shortly after the
incident as “calm, collected, like if nothing had happened.”  Mendoza’s assertion that the
shooting was not intentional is viewed in light of the testimony, his actions
following the incident, his multiple, conflicting statements and the forensic evidence. 
See Williams v. State, 82 S.W.3d 557, 565-66 (Tex. App.CSan
Antonio 2002, pet. ref’d).  Because there was some evidence that Mendoza intentionally discharged the weapon, we conclude that the evidence was legally
sufficient to support the jury’s finding of the requisite mental state for
murder.  See Jackson, 443 U.S. at 319; Wheaton v. State, 129
S.W.3d 267, 273-74 (Tex. App.CCorpus Christi 2004, no pet.)
(concluding the direct evidence and the evidence of the circumstances
surrounding the act support that the fact finder could have found beyond a
reasonable doubt that appellant was aware of the nature of his conduct and
knowingly discharged a firearm at or in the direction of the victim).  The
jury was free to accept or reject the testimony of any witness and evidently
chose to believe the State’s witnesses, and we remain mindful of such
findings.  Watson, 204 S.W.3d at 414 (citing Cain v. State, 958
S.W.2d 404, 407 (Tex. Crim. App. 1997)).  When all of the evidence is viewed
neutrally, the State=s
proof of Mendoza’s culpable mental state is not too weak to support a finding
of guilt beyond a reasonable doubt, nor is the weight of the contrary evidence
strong enough that the State could not have met its burden of proof.  Zuliani
v. State, 97 S.W.3d 589, 593‑94 (Tex. Crim. App. 2003).  

Thus,
the trial court did not abuse its discretion in overruling Mendoza’s motion for
a new trial based on legal and factual insufficiency and we overrule this
appellate issue.

Ineffective
Assistance of Counsel

Mendoza’s last issue on appeal is a claim of ineffective assistance of counsel in
violation of the Sixth Amendment of the United States Constitution.  Mendoza
points to six specific instances of ineffective assistance: (1) allowing the
jury to manipulate the trigger on the firearm during deliberations; (2) failing
to request an instruction on the voluntariness of his statement to police; (3)
failing to seek a limiting instruction on Cassandra’s testimony; (4) failing to
object to Captain Saenz’s testimony; (5) failing to object to Ranger Ramon
physically demonstrating the position in which Mendoza claimed he was in when
the gun fired; and (6) failing to object to expert testimony.

 

A.        Standard of Review

To
prevail on an ineffective assistance of counsel claim, the defendant must
demonstrate, by a preponderance of the evidence, that: (1) counsel’s
performance was so deficient as to fall below an objective standard of
reasonableness; and (2) there is a reasonable probability that but for counsel’s
unprofessional errors, the result of the proceeding would have been different. 
Strickland v. Washington, 466 U.S. 668, 687 (1984) (emphasis added); Thompson
v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  A claim of ineffective
assistance of counsel must be “firmly founded in the record” and “the record
must affirmatively demonstrate” the meritorious nature of the claim.  Goodspeed
v. State, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).  Counsel’s conduct is
reviewed with great deference and without “the deleterious effects of
hindsight.”  Thompson, 9 S.W.3d at 813.

We
note that a direct appeal is usually an inadequate vehicle for raising an
ineffective assistance of counsel claim because the record is generally
undeveloped, providing no explanation for counsels’ actions. Goodspeed,
187 S.W.3d at 392.  “[T]rial counsel should ordinarily be afforded an
opportunity to explain his actions before being denounced as ineffective.”  Rylander
v. State, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003) (holding that
without a developed evidentiary record adequately reflecting the motives behind
trial counsel=s action
and inaction, it is extremely difficult to prove that trial counsel’s performance
was deficient).  “Absent such an opportunity, an appellate court should not
find deficient performance unless the challenged conduct was ‘so outrageous
that no competent attorney would have engaged in it.’” Goodspeed, 187
S.W.3d at 392. 

B.        Analysis

Although
 Mendoza filed a motion for new trial, his motion did not allege that his
counsel was ineffective and he did not otherwise develop a record explaining
counsel’s conduct during trial.  This court will not speculate as to what
counsel’s trial strategy or reasons might have been with regard to the alleged
errors.  Absent a record to the contrary, we must presume that trial counsel’s
conduct fell within the wide range of reasonable professional assistance.  Thompson,
9 S.W.3d at 813-14.  The fact that another attorney may have pursued a
different course of action, or tried the case differently, does not establish
ineffective assistance of counsel.  Dickerson v. State, 87 S.W.3d 632,
637 (Tex. App.CSan
Antonio 2002, no pet.).  

On
appeal, Mendoza asserts his trial counsel erred in:  failing to establish the
validity, reliability or relevance of the expert testimony; failing to object
or request a hearing on the qualifications or reliability of the State’s expert
witnesses; failing to request a limiting instruction, failing to object to
improper evidence, failing to request a jury instruction, and failing to object
to specific witness testimony.  We cannot, however, conclude that the acts and
omissions of counsel in this case are so outrageous that no competent attorney
would have engaged in them.  See Ex parte White, 160 S.W.3d 46,
53 (Tex. Crim. App. 2004) (“To show ineffective assistance of counsel for the
failure to object during trial, the applicant must show that the trial judge
would have committed error in overruling the objection.”); Jones v. State,
229 S.W.3d 489, 494-95 (Tex. App.—Texarkana   2007, no pet.) (finding no
ineffective assistance of counsel because trial counsel failed to request a
jury instruction regarding the voluntariness of the confession); Ex parte
Varelas, 45 S.W.3d 627, 632 (Tex. Crim. App. 2001) (en banc) (refusing to
deem counsel’s failure to seek a limiting instruction ineffective assistance
without providing counsel the opportunity to defend or explain his actions);
Ingham v. State, 679 S.W.2d 503, 509 (Tex. Crim. App. 1984) (holding
failure to object to certain procedural errors or improper evidence does not
necessarily constitute ineffective assistance); Phea v. State, 190
S.W.3d 232, 234-35 (Tex. App.CHouston
[1st Dist.] 2006, pet. ref’d) (holding it is within a trial court’s discretion
to allow a witness “to demonstrate before the jury so as to make more 

 

plain and clear
[his] testimony”).  Because Mendoza failed to overcome the presumption of
effective assistance of counsel, we overrule his appellate complaint. 

Conclusion

Mendoza failed to demonstrate any abuse of discretion by the trial court in admitting
evidence or allowing a juror to continue to serve on the panel.  Mendoza also failed to raise an issue of voluntariness of his statement and thus no jury
instruction was necessary.  At the motion for new trial hearing, Mendoza did not provide admissible proof of juror misconduct, and the trial court did not
abuse its discretion in denying him a new trial.  Moreover, the evidence was
legally and factually sufficient to support the verdict and the record does not
reflect that trial counsel provided Mendoza ineffective assistance. 
Accordingly, we overrule all issues raised on appeal and affirm the judgment of
the trial court.

 

Rebecca Simmons, Justice

 

Do Not Publish           

 









[1]At trial, there was confusion due to the similarity in
the two officers’ names.  Because the trial court and witnesses referred to the
officers as “Gino Martinez” and “Joe Martinez,” we will do the same.